# BELKNAP,

## JUNE TERM, A. D. 1860.

## THE WINNIPISEOGEE LAKE COMPANY *v.* YOUNG.

A demurrer will be sustained to a bill in equity where one of the parties is stated to be a private corporation, if it is not described in substance as a corporation established by law in some State, and transacting its business at some place, but the defect may be amended.

Courts *ex officio* take notice of the civil divisions of the State created by public laws, as counties and towns, and of its great geographical features, as its large lakes, rivers and mountains.

It is necessary, in a bill for the protection of an easement, to allege a title to the right claimed, as an incident to the land, or by grant or prescription, that is, possession, and claim uninterrupted for twenty years.

An allegation of title to raise the water of a stream by grant from the owners of all the land known to be flowed, is *primâ facie* sufficient against any one who is not shown to be an owner of such land.

If the allegations of a bill refer to the condition of things at the time the bill is filed, the relief afforded must be limited to that state of facts.

If a party claims and exercises for twenty years the right to raise the water as high as his dam would raise it when there was sufficient water to fill it, he may acquire a right to the extent of his claim.

IN EQUITY. The bill states that the Winnipiseogee Lake Cotton and Woolen Manufacturing Company have long been and are seized of a waterfall and mill privilege at Folsom's Falls, upon the Winnipiseogee river, in the towns of Laconia and Gilford, in the county of Belknap, of land near and around the same, and of the mills at said falls; that they derive their title on the north-west side of the centre of the river from N. Batchelder, who, on October 20, 1829, and for years before and after, was seized thereof; on the south-east side of the centre of the river

they derive title from the town of Gilford, which, on and before October 10, 1818, was seized thereof; that they hold and possess the right to flow and retain the water in the Winnipiseogee lake to the extent they have flowed and retained the same, not only by the titles aforesaid, and by the uninterrupted use and enjoyment of that right for more than twenty years, but they have derived said right from the owners of mills, dams, and the river at the outlet of said lake, who had maintained said dams, and flowed said lake thereby to a greater extent than they have been flowed by the complainants; that many mills, &c., have been and are kept in operation by the water power there, and the said company have such mills (which are specified); that said N. Batchelder and S. C. Lyford, who then owned the privilege on the Gilford side of the falls, in August, September and October, 1829, built a new dam, higher than the old dam there, but not so high as the dam at the outlet of the lake, and completed the same so as to stop the water, October 20, 1829. The dam in a few days became filled with water, so that, on the 22d of said October, some of the mills were driven by the head raised, and, on the 24th of November, 1829, the water was as high as on the day of filing this bill; that said dam has, ever since the erection of it, been used, occupied and enjoyed in the same manner as it is now used and occupied ; that the plaintiffs, and those under whom they claim, have for all that time claimed, and, except when prevented by the low state of the water in the river, or by other accidental causes, have exercised the right of keeping up the water of said river by said dam, as high as it is now held and retained thereby, and during all that time no owner of land, now claimed by the defendants, or either of them, has instituted any suit or proceeding against the owners of said dam, or complained thereof, till the acts now set forth ; that above the dam is Long Bay and the Winnipiseogee Lake, separated from

Long Bay by a channel, or part of the river, about one hundred rods long, in which there is a descent of the waters of the lake flowing into Long Bay; that said dam raises the waters of Long Bay higher than they had been raised, and the owners thereof purchased the right to maintain the same, and to raise the waters of said bay, from nearly every owner of said lands who was known to have lands so flowed; that said dam does not and has not, as used, raised the waters of the lake higher than they had before been raised or kept, nor does it flow lands owned, if any are owned, by the defendants upon the shores of the lake, more than the same had been before flowed; that the water in said bay and lake does not flow any lands lying upon or adjacent to said lake, more than they had been flowed for more than twenty years next before the proceedings of the defendants, after mentioned; that, after the building of said dam, the channel, or part of the river between the bay and the lake, has been deepened, so that the water stands at a lower level than before, and as low as it would stand if there were no dam at Folsom's Falls, and no excavation had been made; that the complainants are ready and able to establish, in any trial at law, their right, as against the defendants, to maintain and use said dam, as they do and have used the same, and to prove the facts herein before set forth, showing that the defendants, or any of them, are not injured thereby, nor any of their lands flowed by the water raised, or set back by said dam, more than the complainants have a right to do; that the defendants, pretending that they have lands, near or upon said lake and river, which are injured in consequence of said dam, threaten to cut down and demolish said dam.

The complainants also charge that if the defendants, or either of them, have any lands affected by said dam, they have acquired their rights with full knowledge of the existence and effect of the dam, and of the claims of

the complainants, and their right is contaminated by maintenance and barratry. The complainants say that the lands claimed by the defendants, so far as they can learn their claims, are not flowed nor affected by said dam more than they have been for more than twenty years past; that the defendants are insolvent, and unable to respond for the damage that would be occasioned by the execution of their threats. They pray an answer, and an injunction against demolishing, cutting down or injuring said dam, or any part of it, till they have established their right at law, and for other relief.

A demurrer was filed by all the defendants, but it was objected by the complainants that James Worster, one of the defendants, was held under proceedings for contempt, and his demurrer, therefore, could not be received; and the demurrer was withdrawn by leave of the court, the name of Worster erased, and it was then filed anew, as the demurrer of the other defendants.

The demurrer, after protestation, shows the following causes:

1. It does not appear by the bill that the plaintiffs, the said Lake Company, is a corporation existing by law, or what it is, so that the court can have jurisdiction of the bill, or the parties to it.

2. It does not appear by said bill to what extent the plaintiffs hold and possess the right to flow and retain the water in the lake; nor, by the titles referred to, that they had the right to flow and retain the water of the lake in any way, or to any extent whatever; nor what the right is that they have had the uninterrupted use and enjoyment of for more than twenty years; nor that said uninterrupted use and enjoyment was during the twenty years immediately preceding the 28th of September, 1859; nor that the right, whatever it was, that the complainants had had the uninterrupted use and enjoyment of for more than twenty years, was held adversely; nor that the plain-

tiffs had in any way acquired the right to retain and flow the water in Long Bay.

3. The plaintiffs aver that on the 24th of November, 1829, the water in said dam was as high as upon the day of filing this bill, on the 2d of November, 1859, while the acts complained of were committed September 28, 1859. Now it does not appear but that the water, on the 28th of September, 1859, was at an improper height, and at the filing of the bill was at a proper height; nor but that the height of the water in the dam, November 24, 1859, was accidental, or that it continued at that height for a single day.

4. They aver that they took conveyances of nearly every owner of lands adjacent to Long Bay, which were known to be flowed. But it does not appear that the defendants are not in possession of lands, or leases of lands, that are injuriously affected and flowed by the rise of water occasioned by their dam; nor but that all of them are lessees of land upon Long Bay, which are ·flowed unlawfully by the water by reason of the complainants' dam.

5. It does not appear that the complainants, and those under whom they derive their title, have, since October 20, 1829, lawfully kept up said dam, and lawfully asserted and exercised the right, with only occasional exceptions, mentioned in the bill, of keeping up the water above the same by said dam.

6. They aver that the lands claimed by each of said defendants, or any of said lands, were not flowed, or affected by said dam, more than they have been affected by said dam for more than twenty years past; but it does appear that said lands, so claimed, or any of them, were lawfully flowed, or affected by said dam.

7. It does not appear that Josiah B. French, who signs said bill, &c., has read it, or heard it read, or knew its contents, or has any knowledge in any way of ·the matters set forth in it.

*Rolfe,* and *E. A. Hibbard,* for the defendants.

1. There is no complainant in court, and this appears by the bill; at least, it does not appear who or what the complainants are. They are represented to be a certain kind of manufacturing company, but whether a partnership, or a corporation, or what, does not appear; or where, or by what authority, they are in existence, or that they have any existence whatever. Such a defect may be taken advantage of by a demurrer, or plea in the nature of a plea in abatement, and so the court say in 29 N. H. 443, and the doctrine is sustained by Story Eq. Pl. 26, n. 2, and by Dan. Ch. Pr. 625. Here is plainly a defect in giving the name and description of the complainant, and a manifest neglect to set forth either their residence or place of business.

2. The subject matter of the bill is not described and set forth to be within the jurisdiction of this court. It does not appear in any way in what State the property is situated. It should appear, positively and directly, where property is which is the subject matter of the bill, so that the court can know from the bill itself whether or not it can have or take jurisdiction; and nothing *dehors* the record—the bill itself—can give the court information whether this land, these mills and privileges, are in the State of New-Hampshire or some other State.

3. The bill does not set forth that the complainants have, for twenty years previous to the filing of this bill, or prior to the happening of the acts complained of, been in the uninterrupted use and enjoyment of any right named in the bill, to flow either of the defendants' lands; nor does it in any way appear from said bill that the use and enjoyment mentioned in said bill, such as it is, has been adverse, and it must appear that it has been uninterrupted and adverse. *Lund* v. *Parker,* 3 N. H. 49; 8 N. H. 57; 13 N. H. 485; *Worster* v. *Great Falls Company,* Strafford county, not reported, in which *Perley,* C. J., pronounced

the opinion. This case, which was agreed, found that the lands had been uninterruptedly flowed for more than twenty years before the date of the writ. The court held that that was not sufficient, but it must appear that such possession was both uninterrupted and adverse.

4. The bill alleges that after 1829 the owners purchased the right to maintain the dam, and to raise the water thereby, and took conveyances thereof from *nearly* every owner who was known to have lands flowed, thus admitting that they did not purchase *all*. The owners of the title, which these defendants claim, may, so far as anything appears in the bill, never have made any. The bill alleges that the complainants, and those under whom they claim, have claimed and exercised the right of keeping up the water of said river to as high a point as that to which it is *now* held and retained; but, for aught that appears, this was by license from the owners or occupants, and it was so in fact; and further, *now* refers to the time of filing the bill, when the water may have been, and was in fact, much lower than at the time of the acts complained of.

5. There is no allegation in the bill that the water was ever, for any period, kept as high as it was when these defendants attempted to remove the dam, nor that the water in the dam has ever been kept at any definite height at any time. For anything that appears in the bill, the water, at the time of the acts complained of, may have entirely overflowed the defendants' lands, and the land of each and every one of them, and at the time of the filing of this bill were at such a height as the complainants had a right to maintain and keep them, and at such a height as the defendants made no complaint of.

*Perley* (*Whipple* and *Eastman* with him), for the complainants.

1. It sufficiently appears that the plaintiffs are a corporation.

2. The bill states that the dam and privilege are in Laconia and Gilford, in the county of Belknap. Of course it will be intended that the county of Belknap in this State is meant.

3. The bill states that the complainants have the right to maintain the dam, and it is not necessary to show how the right was acquired. The bill shows that the possession and use were under color of title, and a claim of right, and therefore adverse. The defendants on this demurrer appear to be mere wrong-doers, and possession is enough against them.

4. It is wholly immaterial to this question, whether the complainants have the right to flow the lands of third persons. The complaint is that the defendants threaten to take away the dam, so as to stop the works. They therefore threaten not to reduce the dam and water to the usual level, but to interrupt the habitual use of the dam and privilege, as stated in the bill.

5. The fifth cause of demurrer goes on the compounded assumption that the defendants flowed by the dam, and also that the complaint is for an interruption to any other than the habitual use of the dam.

BELL, C. J. The bill in this case, in its general frame and most material allegations, as to the complainants' title to their dam, and right to flow, very closely resembles the bill recited in 29 N. H. 433. As to the first point raised by the demurrer, it is in the same terms. In that case the bill was taken as confessed after repeated appearances, and the defendant then moved that the bill should be dismissed for want of jurisdiction; among other reasons, because it was not stated that the complainants were a corporation. But the court say that the facts alleged in the bill are all admitted to be true, and all defects in the mere form and frame of the bill are waived, where it is

taken *pro confesso;* and, consequently, the only questions open on the motion were the jurisdiction of the court over the parties and over the subject matter, as coming within the range of equity proceedings. The defect complained of, however material it might be, raised no question of jurisdiction; and it was intimated by the court that, if there was a material defect in the description of the parties, it must be taken advantage of by demurrer, or by a plea in the nature of a plea in abatement. The rule is generally that a party who applies to the court for relief, shall state his own name and addition, so as to make it clear who is intended, and to preclude all probability of mistake. Story Eq. Pl., sec. 26.

· The practice, we think, is nearly universal, that a corporation is described in its bill by its corporate name, with the addition of the fact that it is a corporation duly established by law in such a State, and having its place of business at such a place; and a corporation defendant is described in the same way. In the case of public corporations created by public laws, the court is officially to take notice of the corporate character. As in *Withers* v. *Warner*, 1 Str. 309, the court were of opinion that they must take notice that London is a city, it being mentioned to be so in several acts of Parliament. But in the case of private corporations, created by charters or private acts, the court is not merely not bound to take notice of the corporate names as such, but they cannot officially take such notice. The party is bound to allege it, as a fact to be proved, if he would avail himself of it. Arch. Civ. Pl. 108. If, then, a party does not allege the corporate character of either party, plaintiff or defendant, it must be assumed by the court that the name is descriptive either of an individual or of an association. This is the result of the decisions. In *Union Fire-Insurance Company* v. *Osgood*, 1 Duer 707, however, it was held that, where the

plaintiffs sue in a name appropriate to a corporate body, it is not necessary to allege that they are a corporation. The decision leaves it uncertain what is a name appropriate to a corporate body, partnerships being at liberty to adopt any name they please. But in *State* v. *Mead*, 27 Vt. 722, it was held that "the Vermont Central Railroad Company" did not, *ex vi termini*, import that they must be a corporation under the laws of Vermont or of any State, and the court, unless it is so alleged, cannot take judicial notice that such is the fact. The allegation would be sustained by proof that the railroad company was a voluntary association. The intendment is against the pleader. And with this agree the cases of *State* v. *Central Railroad Company*, 28 Vt. 584; *State* v. *Same*, 28 Vt. 583; *Central Manufacturing Company* v. *Hartshorn*, 3 Conn. 190; *Camden, &c.,* v. *Romer*, 4 Barb. 127; *Bank* v. *Simonton*, 2 Tex. 531, 11 U. S. D. 106.

It is clear that a voluntary association has no right to sue in its partnership name, but the action must be brought in the names of the individuals who compose the association, or some of them. Welf. Eq. Pl. 56; Story Eq. Pl. 386; 1 Dan. Ch. Pr. 29, 30. And in such case we think a demurrer well lies on account of the defective description of the party. Story Eq. Pl. 26; 4 Barb. 127.

The effect of a demurrer for such a cause is not a dismission of the bill. The party has leave to amend, and it is only in those cases where he cannot or will not amend, that the bill is dismissed. 1 Dan. Ch. Pr. 30.

The second cause of demurrer assigned seems to us entirely without foundation. The privilege and mills of the plaintiff, and the dam threatened to be torn down and demolished, are alleged to be at Folsom's Falls, in the towns of Laconia and Gilford, in the county of Belknap. The courts *ex officio* take notice of the principal civil divisions of the State. The county of Belknap, and all the counties in the State, are judicially noticed as coun-

ties within the State, and the same rule is held in England and elsewhere. *Lake Company* v. *Worster*, 29 N. H. 443.

Towns here are, and immemorially have been, created and incorporated by public statutes ; and they are at least once in four years recognized by public statutes as towns, situate in particular counties, and as towns composing part of the State, and have been recognized from time to time by public laws, as towns composing parts of senatorial and councillor districts, and of the military divisions of the State. And we think it cannot be doubted that courts are as much bound to take judicial notice of our towns as they are of our counties, and for the same reason, that they are constituted towns and parts of the counties by public laws, of which the courts are bound to take notice. In *King* v. *Journeymen Tailors*, 8 Mod. 11, it was held that Cambridge, being mentioned in several acts of Parliament, the court must take notice of such acts, and intend that Cambridge is in the county of Cambridge ; and the like was held in *Withers* v. *Warner*, before cited, and in *People* v. *Breese*, 7 Cow. 429.

Public statutes, says Chitty (1 Pl. 218), and the facts they ascertain, must be noticed by the courts without their being stated in pleading. 1 Bl. Com. 85 ; 3 Shars. Bl. Com. 293, n. 1. The division of England into counties will also be noticed by the court *ex officio*, but not that of particular liberties, which must be stated in pleading. So the court will take judicial notice of what towns are incorporated, and of the extent of ports, and of the river Thames.

The court here takes official notice of the towns in the several counties, by sending to them venires for jurors, &c.

We recollect of no decision that the courts are *ex officio* to notice the great lakes, rivers and mountains of the State, as parts of it, and as lying within its limits, but it can hardly be doubted that courts would notice, of course, the great geographical features of the State. That the

Winnipiseogee lake and river are in New-Hampshire, it would seem every court must observe without proof. But if there could be any doubt of it, it seems set at rest by the statute of June 29, 1841, in addition to the act to constitute the counties of Belknap and Carroll, which provides that the boundary line between the counties of Belknap and Carroll shall begin at the easterly termination of the line dividing the towns of Meredith and Moultonborough; thence running easterly to the southerly point of Long Island, in Winnipiseogee Lake; thence easterly to the southerly point of Parker's Island; thence easterly to the westerly termination of the line dividing the towns of Wolfborough and Alton, and all the lands and waters lying northerly of said line, and between that and the towns of Moultonborough, Tuftonborough and Wolfborough, shall constitute part of said county of Carroll; and all the lands and waters lying southerly of said line, and between that and the towns of Meredith, Gilford and Alton, shall constitute a part of said county of Belknap. The towns named in this bill—Laconia, Gilford, Tuftonborough, Wolfborough and Alton—are made parts of Belknap and Carroll counties in express terms, by the act constituting those counties.

It is insisted that the bill does not allege that the complainants had been in the uninterrupted use and enjoyment of any right to flow the defendants' lands, for twenty years previous to the filing of the bill, or prior to the acts complained of; nor that the use and enjoyment, such as it was, had been adverse. The question here is not whether the plaintiffs show a good title as against these defendants, with reference to any lands owned by them, but whether they show a good *primâ facie* title in themselves, as against wrong-doers—persons who, so far as appears by the bill, are not the owners of any property, either injured or liable to be injured by the effects of the plaintiff's dam. At common law, possession is a good

title against a wrong-doer. The party who shows that he is in the actual enjoyment of an easement, under a claim of right, is entitled to be protected in that enjoyment against those who have no adverse and inconsistent right.

In actions for trespass or ouster of the land itself, it is enough to allege that a party is seized or possessed of the property, and if that fact is admitted by a demurrer, it constitutes a perfect title. The same principle, of course, governs in the case of easements, but the different nature of easements renders it necessary to vary to some extent the form of the allegations, the purpose being still the same—to allege that the party is in possession of the easement. *Palmer* v. *Keblethwaite*, Show. 64; *Jackson* v. *Savage*, 2 Ld. Raym. 1568; *Brown* v. *Best*, 1 Wils. 174.

An easement can be acquired at common law only by grant, or prescription which pre-supposes a grant. It is, therefore, necessary for a party who assumes to describe his title, to state it as derived in one of these modes; though it is held sufficient to allege that he is lawfully possessed of certain mills, and by reason thereof ought to have the benefit of the water of a certain stream, which, of right, ought to have run and flowed to the same; 2 Ch. Pl. 337, &c.; Prec. Dec. 196, &c.; Angell on Watercourses 446; Anon. Cro. Car. 499; *Glyn* v. *Nichols*, Comb. 43; because, no doubt, in many cases the right to water is an incident to the land itself, rather than an easement.

The same principles, we apprehend, must govern in a bill in equity. The party who seeks relief from an injury to his property need do no more than allege that he is seized or in possession of it, against any one whom he charges as a wrong-doer. If he alleges an injury to an easement or privilege in the land of another, which is *primâ facie* against common right, he should ordinarily state the possession of the easement under some title by which it might be acquired, as by grant or prescription, except in the case of water, before referred to.

At common law, prescription must be alleged from time whereof the memory of man runneth not to the contrary, but it has been held here, in accordance with the general current of decisions in this country, that an adverse and uninterrupted enjoyment for twenty years of an incorporeal hereditament, affords a conclusive presumption of a grant, or a right, as the case may be, which is to be applied as a *presumptio juris et de jure,* whenever by possibility a right can be acquired in any manner known to the law. In order, however, that the enjoyment of an easement in another's land may be conclusive of the right, it must have been adverse, that is, under a claim of title, with the knowledge and acquiescence of the owner of the land, and uninterrupted; and the burden of proving these facts is on the party claiming the easement. *Wallace* v. *Fletcher,* 30 N. H. 448.

So far, then, as the plaintiffs' bill in this case is to be regarded as brought for the protection of their easement in the right of raising and keeping up the water of the Winnipiseogee river and lake, and the smaller lake, called the Long Bay, it is necessary that they should allege a title to the right they claim, by grant or prescription, or both.

For the protection of their dam alone, it would be sufficient to allege their possession alone. It would seem that the plaintiffs, regarding the question of the dam as important chiefly as the means of preserving their easement and right of keeping up and controlling the water, have preferred to put forward the easement as the main question of the case.

Have they, then, stated a title by grant or prescription, such as is required here, sufficient to justify the relief they ask?

They state their case differently as to the lake, and the bay or pond below. They allege that they have deepened the river, or channel, from the bay to the lake, and that the water of the lake stands at a lower level, and as low

as it would stand if there had been no excavation and there was no dam at Folsom's Falls; that is, they deny that their dam raises the water of the lake above its natural condition.

In the next place, they allege that they acquired the right to flow the lake from the owners of the outlet; but as they do not assert that those owners had such right themselves, by grant or prescription, this averment may be regarded as of no importance.

They state that Batchelder and Lyford, who then owned the privilege at Folsom's Falls, in 1829 erected a new dam, higher than any former dam at that place, but not so high as the dam at the outlet of the lake, and completed it October 20, and filled it November 24, 1829, and this dam, ever since the erection of it, has been used, occupied and enjoyed in the same manner as it is now used and enjoyed. The plaintiffs, and those under whom they claim, have for all that time claimed and exercised the right of keeping up the water of said river, by said dam, as high as it is now held and retained thereby, except in low water and in case of accidents, and during all that time no owner of land, now claimed by the defendants, or either of them, has instituted proceedings against the owners of the dam, or complained thereof.

On examining these allegations, they seem to us entirely within the rule, as it regards both the lake and the long bay. They have kept the water up by their dam as it now is, nearly thirty years, claiming the right to do so. This allegation, that they claimed the right to raise the water, is equivalent to alleging an adverse possession.

As it regards the waters of Long Bay, they admit they raise the water, but they assert that they have purchased the right to do so of all whose lands they know to have been flowed. This is a sufficient title by grant *primâ facie*, and if the defendants have not sold, and have lands flowed, it is for them by their answer to show it. Having

raised the dam and bought the right to flow, they have flowed for nearly thirty years, claiming the right to do so. Till something more appears this is a good title to maintain the bill.

It is objected that the plaintiffs do not allege a purchase of *all* the owners of the land flowed. They say *nearly all.* It is said this admits there were some of whom they did not purchase the right, and the owners of the lands the defendants claim may be among these. If this were so, the allegation that they have kept up the water more than twenty years under a claim of right, is, *primâ facie,* sufficient.

It is objected that the allegations of the bill, as to the height of the water, refer, not to the time of the acts complained of, but to *now*—the time of filing the bill; but this is no ground of demurrer. If they limit their claim to the state of the water at the time of filing their bill, they will get their relief confined to that state of things; and if, in point of fact, the water was higher at the time of the acts complained of, and that would furnish in part or wholly a justification for what was then done and said, that is a matter of defence, to be shown by the answer. Nothing of that kind can be assumed. The bill says the dam was always used as it now is.

It is said the water was kept up, as alleged, by license of the owners of the land; but we cannot assume that against the allegations of the bill, which state no such license, but on the contrary state they kept up the water, claiming the right to do it.

It is again objected that it is not alleged that the water was ever as high as it was when the defendants attempted to remove the dam. The plaintiffs do not put their present claim on the condition of things, as it regards the dam and water on the day the defendants attempted to take it down, but on the state of facts existing at the date of the bill. If there is a difference, and that difference is shown

by the pleadings and the evidence, the defendants must have the benefit of it on the hearing.

It is said the bill does not allege any certain height at which the water was kept up at any time. It is not, perhaps, necessary to state such a fact. The water may be liable to great fluctuations, and if in substance it is alleged that it was kept up as high as their dam would raise.it, when there was water, its being drawn by the plaintiffs for their own purposes would not prevent their acquiring a right to the extent of their claim. There is an easement of drawing water from a well. In the nature of things there cannot ordinarily be any continuous use of such an easement; but if it appeared that a party had claimed the right of drawing water at all times, at his pleasure, and had exercised the right of drawing, as he had occasion, for twenty years, that would establish his right. What. on Easements 11; 2 Bouv. Inst. 174, 183.

Rights of way, and some other easements, are not continuously exercised; but the right is acquired by an uninterrupted use of the right at all times, at the pleasure or convenience of the party claiming the right.

On the same principle, if the plaintiffs claimed the right to keep the water in their dam at its full height, whenever they chose, and had water to fill it, and exercised that right for twenty years, agreeably to their claim, it would be conclusive that they possessed the right.

The court cannot, without proof, pronounce that the state of the dam and of the water set up in the bill—their condition on the day of filing this bill—is not such a state of things as admits of certain and definite proof. The height of the water may be as certain, and as certainly known on that day, as if it was stated in feet and inches from a bench mark.

*On motion, leave was granted to amend the bill.*