BUCKLIN *v.* TRUELL & A.

Twenty years' use of the water of a stream or a pond in a particular way is evidence of a right to use it in the same way, and the use of a dam for twenty years in a particular way is evidence of a right thus to use such dam.

CASE, by Moses Bucklin against Hiram Truell and Sumner Truell, for flowage.

This cause having been tried by the court under the provisions of ch. 189, secs. 4 and 5, Gen. Stats., the following facts and conclusions of law are reported:

At the northerly margin of Grafton pond, so called, in Grafton, is a tract of land, with a saw-mill, mill privilege, and a dam at the outlet of said pond, on said northerly shore. More than forty years ago this tract of land, saw-mill, privilege, and dam were owned by Phineas Gage, who also owned a tract of land containing about fifty acres, situated on the south-westerly shore of said Grafton pond. By his last will, approved October 16, 1849, Phineas Gage devised the said tract of land, situated on the south-westerly margin of said pond, to his grandson, Roswell Gage; and by the same will he devised to his two sons, Calvin and Converse, and to said Roswell, the saw-mill, land, privilege, and dam at the outlet of said pond. On March 30, 1850, the said Roswell, Calvin, and Converse joined in the conveyance, by warranty deed, of said saw-mill, privilege, dam, and the lands belonging thereto, "with all the privileges and appurtenances," to one John Williams. On March 15, 1851, Williams conveyed the same to Hiram Truell, one of the defendants, who occupied the same till 1863, when he conveyed one undivided half thereof to Sumner Truell, the other defendant.

The tract of land lying on the south-westerly shore of said pond, before mentioned, was conveyed by Roswell Gage to the plaintiff, by his deed of November 2, 1859, "excepting every legal right of flow-

age." This tract of land includes the eight acres of meadow land first described in the plaintiff's declaration, and the whole thereof is now and has ever since said conveyance been the property of and possessed by the plaintiff.

The dam at the outlet of said pond was built in 1818, and has remained unchanged ever since. During all this time the practice has been for the parties owning the dam and saw-mill to saw logs in the spring so long as sufficient water from the pond enabled them to do so, and when the water became so low that they could not run the saw, to shut the gate, thereby retaining and accumulating the water in the pond, until sufficient water should thus be retained to enable them to saw their lumber. It was usually the case that the gate was thus closed and the water retained for this purpose until the coming on of the fall rains. During all this time there has been no summer season in which the gate, thus closed for the purpose of retaining the water, has been hoisted for the purpose of draining the meadow lands on said fifty acre lot; and the brooks feeding said pond are so small that it has very rarely happened that the water thus retained and accumulated in the pond would be high enough to flow those meadow lands to their detriment, or to the interruption of the cultivation of the grass or the gathering of the hay thereon. About the year 1828 the then owner of the dam and adjacent lands began to lower and deepen the channel leading to his mill, by means whereof he was enabled to draw the water from the pond during a longer period of time in the summer season, and this draining, in fact, created the greater portion of the meadow of the plaintiff, which had previously been almost entirely and almost always covered by water. This meadow land was first cleared up by its then owner, Phineas Gage, about 1835.

After the defendants purchased the mill and dam, &c., they deepened the channel still more, lowering the waters of the pond thereby from two to two and a half feet.

The other piece of land described in the plaintiff's declaration was purchased by him in 1865 of Sarah Bucklin. So much mowing land as exists thereon was, in fact, created by the draining of the land, by the deepening of the channel at the outlet of the pond before mentioned and described; and before the deepening of said channel it had always been flowed in the same way as the other piece of land.

And thereupon the court found that the defendants were not guilty in manner and form as the plaintiff hath thereof alleged against them.

The plaintiff moved that this verdict be set aside; and it was ordered that the questions thereupon arising be reserved.

*Barnard & Sanborn,* for the plaintiff.

*Murray,* for the defendants.

SARGENT, C. J. The case finds that the defendants owned a tract of land, with a saw-mill, mill privilege, and dam thereon, at the outlet of

Grafton pond, upon the northern shore thereof; that said dam was built in 1818, and has remained unchanged ever since; and that during all the time from 1818 until the time of trial the defendants and their grantors, the owners of the mill for the time being, have been accustomed to use the water in the spring to saw with as they had occasion while the water was plenty, and so until the waters of the spring-time had subsided; and in summer it had been usual for them to shut the gates, and hold all the water in the pond for occasional use until the fall rains made the water abundant; and that in no case had the gate of the dam been hoisted during any summer season with any view to drain these meadow lands upon the shore of the pond.

The right exercised by these defendants there since 1818, a period of fifty-five years, has been to keep a dam of a fixed and uniform height, and, except in seasons of high water, when it fills and overflows their dam, to hold all the water there was in the pond and all that ran into it, and use it at their own convenience when they had occasion to use it at all, and during the summer season to keep their gates shut and hold back all the water that came into the pond from all sources, using it as they had occasion until the rains of the autumn. They thus held all the water of this pond through the summer and through the other seasons of the year as they pleased, to the extent of the height of their dam. In seasons of high water, or in very wet seasons, so that it overflowed the dam, they must let it run over without obstruction; they could not raise their dam to make it hold more water, and so, when the water was low and in dry seasons, they controlled all there was, whether much or little, up to the level of their dam. That the water might be much lower some years than others would not affect the defendants' right, or prevent their holding all there was in a wet season until their dam was full.

Such was the use that was long made of the water of this pond in 1850, when the three Gages sold to Williams this mill and privilege and dam, " with all the privileges and appurtenances thereto belonging," conveying the right to continue to make the same use of it in the future as had been made in the past. Such was also the use that was being made of the water, the gates, and the dam when Roswell Gage conveyed to this plaintiff in 1859 this meadow, " reserving every legal right of flowage."

If a dam be not used to turn the waters to the use of a mill at all, the height of the dam would be no criterion of the right to use it; but twenty years' use of the water of a stream or a pond in a particular way is evidence of a right to use it in the same way, and the use of a dam in a particular way for twenty years is evidence of a right thus to use it. *Burnham* v. *Kempton*, 44 N. H. 78. Here the right established by the use would seem to be, to use all the water that came into this pond, from streams or springs or rains or any other source during the year, as they please, with the right to control the same without limit except the height of their dam. Both pieces of land of the plaintiff have been made, as the case finds, substantially, by the defendants

and their grantors lowering the outlet of the pond; but, while they have thus lowered the outlet so that they can draw down the water lower than before, they have not lowered their dam or kept their gates shut or open in any manner different from what they did before.

The defendants and their grantors have not relaxed or yielded any right or claim, or lost any, by non-user. For fifty years and more they have exercised the right without interruption of using the water as they chose, and controlling it, and keeping back all there was through the summer season, whether more or less, as they pleased,—their right to use and to control it being only limited by the height of their dam. The defendants were in the exercise of these rights only at the time of which the plaintiff complains, and though the water may have been higher that season than in other years, yet that does not change or affect the rights of the parties. There must be

*Judgment on the verdict.*