Carroll
No. 96-588

JOSEPH W. SANDFORD, JR.

v.

TOWN OF WOLFEBORO & a.

April 13, 1999

*Douglas, Robinson, Leonard & Garvey, P.C.*, of Concord (*Charles G. Douglas, III* and *C. Kevin Leonard* on the brief, and *Mr. Douglas* orally), for the plaintiff.

*Barto and Puffer, P.A.*, of Concord (*Mark H. Puffer* on the brief and orally), for defendant Town of Wolfeboro.

*Carolyn W. Baldwin*, of Concord, for defendant Lake Wentworth Association, filed no brief.

BRODERICK, J. The plaintiff, Joseph W. Sandford, Jr., appeals the Superior Court's (*Abramson*, J.) ruling that defendant Town of Wolfeboro (town) had acquired a prescriptive easement to flow Sandford's lakeside property above 528 feet mean sea level (M.S.L.). We affirm in part, reverse in part, and remand.

I

Because this case was decided by summary judgment, we recite the undisputed facts supported by sufficient documentation in accordance with RSA 491:8-a, and only those allegations necessary to illustrate the conflict before us. Sandford owns property on the shore of Lake Wentworth in Wolfeboro. The level of water on Lake Wentworth and Lake Crescent is controlled by dam #258.01, which has had a height of approximately 534.7 feet M.S.L. since the 1920s. In 1958, the town acquired the dam by deed from the Smith River Corporation, subject to an agreement dated April 12, 1958. The agreement required the town to maintain certain *minimum* water levels in Lake Wentworth, which varied according to the time of year. It did not, however, limit the *maximum* water level. The agreement also stated that the town was acquiring the dam "primarily for the benefit of property owners along the shores of Lake Wentworth and Crescent Lake."

It is undisputed that since the 1920s, the water level of Lake Wentworth was maintained at the top of the dam during some portion of the year. Once the town owned the dam, it considered input from defendant Lake Wentworth Association (association), an organization representing the views of the lake's littoral property owners, when setting the particular water level. From 1958 to 1983, the town caused the lakes to be lowered approximately two and one-half feet from 534.7 feet M.S.L. between July 1 and September 1. Sandford alleges that in 1987, the town instituted a "no summer drawdown" policy and maintained Lake Wentworth's water level at 534.7 feet M.S.L. throughout the summer months. The town disputes this contention. He claims that this policy deprives him of the benefit of his property, and causes extensive shoreline erosion, tree damage, property damage, and damages to the structures on his property.

Sandford alleges that in 1989, he notified the town that he was withdrawing permission to flow his property beyond 528 feet M.S.L. The town agrees only that in 1989, Sandford informed it that he would like the level of the lake lowered at various times of the year. Following proceedings before the Water Resources Division of the Department of Environmental Services, Sandford filed a writ in superior court, in which the association intervened, alleging that the town's flow of his land beyond 528 feet M.S.L. was unlawful. The town moved for summary judgment, claiming that it had acquired a prescriptive easement to flow Sandford's land up to 534.7 feet M.S.L. based on the pre-1958 conduct of its predecessors in title as

well as its own conduct since 1958. It conceded for purposes of the motion that it did not own Sandford's littoral land beyond 528 feet M.S.L. The trial court granted the town's motion, ruling that the town had a prescriptive easement to flow water to the top of the dam in a reasonable manner. The court further clarified its order in response to Sandford's motion for reconsideration. Sandford then appealed to this court.

## II

"In reviewing a grant of summary judgment, we look at the affidavits and other evidence, and all inferences properly drawn therefrom, in the light most favorable to the non-moving party." *Del Norte, Inc. v. Provencher*, 142 N.H. 535, 537, 703 A.2d 890, 892 (1997). "If our review of that evidence discloses no genuine issue of material fact, and if the [moving party is] entitled to judgment as a matter of law, we will affirm the grant of summary judgment." *N.E. Tel. & Tel. Co. v. City of Franklin*, 141 N.H. 449, 452, 685 A.2d 913, 916 (1996); *see* RSA 491:8-a, III (1997). We consider a disputed fact "'material' for purposes of summary judgment if it affects the outcome of the litigation under the applicable substantive law." *N.E. Tel. & Tel. Co.*, 141 N.H. at 452, 685 A.2d at 916 (quotation omitted). "Our review of the trial court's application of the law to the facts is *de novo*." *Del Norte, Inc.*, 142 N.H. at 537, 703 A.2d at 892.

To achieve a prescriptive easement, the town must prove by the balance of the probabilities adverse, continuous, and uninterrupted flow of Sandford's land for twenty years "in such a manner as to give notice to the record owner that an adverse claim was being made to it." *Greenan v. Lobban*, 143 N.H. 18, 22, 717 A.2d 989, 992 (1998). "The nature of the use must [have been] such as to show that the owner knew or ought to have known that the right was being exercised, not in reliance upon [the owner's] toleration or permission, but without regard to [the owner's] consent." *Town of Warren v. Shortt*, 139 N.H. 240, 243, 652 A.2d 140, 141 (1994) (quotation and emphasis omitted). On appeal, Sandford challenges the trial court's conclusion regarding the adverse and continuous use elements, as well as the scope of any easement achieved.

Before reviewing Sandford's specific claims of error, we first address his assertion that our review is limited to whether a prescriptive easement was created prior to the town's 1958 acquisition of the dam. Sandford argues that because the trial court relied on the conduct of the town's predecessors in title between the 1920s and 1940s to conclude the town acquired a prescriptive easement,

our review is likewise limited to the pre-1958 time period. We need not determine whether our review is so limited because we conclude that the sufficiently supported facts viewed in Sandford's favor demonstrate that the town acquired a prescriptive easement through the conduct of its predecessors in title. Therefore, we turn to Sandford's specific claims of error regarding the town's prescriptive easement claim.

## III

Sandford argues that the trial court erred in concluding that the town satisfied the adverse use element. He asserts that the court erred in relying on the trespassory nature of the town's flowage of his land and by failing to require the town to prove *absence of permission* as a necessary component. He further asserts that the record was insufficient to establish that the town's use of his land beyond 528 feet M.S.L. was adverse; rather, he argues, the record shows permissive use when viewed in his favor.

The parties dispute whether the claimant or the landowner bears the burden of proof concerning permission, and particularly contest our holding in *Town of Warren*, 139 N.H. 240, 652 A.2d 140. Sandford argues that the town bears the burden of producing evidence of absence of permission to establish the adverse use element. The town contends that it need only produce evidence of trespassory use to establish the adverse use element, and that Sandford bears the burden of proving the existence of permission. The town asserts that under *Town of Warren*, a claimant need only prove *absence* of permission when asserting the existence of a prescriptive easement where the claimed right of way is coterminous with a deeded easement for the benefit of another. We conclude that neither party accurately interprets *Town of Warren*, and clarify that holding today.

In *Town of Warren*, we squarely addressed the issue of consent relating to the adverse use element. We reviewed our prior prescriptive easement case law and explained the parties' burdens of production and persuasion regarding this element. In so doing, we concluded that to establish a *prima facie* case on adverse use, a claimant must initially produce evidence of *acts* of such a character that create *an inference* that the claimant adversely used the landowner's property, that is, used it without permission. *See id.* at 243, 652 A.2d at 142. We did not require the claimant to produce affirmative evidence of absence of permission to satisfy its initial burden of establishing a *prima facie* case. Rather, we determined

that once the claimant satisfies the initial burden of production, that burden then shifts to the landowner to produce evidence that the claimant's intrusive acts were, in fact, permitted. *See id.* This is not a shifting burden of persuasion; once the claimant satisfies the initial burden of establishing a *prima facie* case, the burden of production shifts to the landowner to produce evidence to the contrary on the issue of permission or run the risk of the fact finder finding in the claimant's favor. *Cf. Tzimas v. Coiffures By Michael,* 135 N.H. 498, 501, 606 A.2d 1082, 1084 (1992). The claimant always maintains the burden of *persuasion* on the issue of absence of permission as a necessary component of the claim of right or adverse use required for a prescriptive easement claim. *See Town of Warren,* 139 N.H. at 244, 652 A.2d at 142. The claimant must always satisfy the burden of persuasion to succeed on a prescriptive easement claim, even when the landowner fails to produce evidence of permission once the claimant establishes a *prima facie* case. Otherwise, "the requirement of adversity as an essential element of the prescriptive easement claim would be practically eliminated." *Id.* at 243, 652 A.2d at 142. With this standard in mind, we review the undisputed, sufficiently supported facts as to the relevant parties' pre-1958 conduct.

Since the 1920s, water has flowed to the top of the dam, which measured approximately 534.7 feet M.S.L., for a portion of each year. Further, the town conceded for purposes of summary judgment that it did not have title to the land beyond 528 feet M.S.L. Sandford correctly asserts that the affidavit submitted by the town with its summary judgment motion did not contain facts concerning the pre-1958 water flow by the town's predecessors in title. Sandford, however, specifically conceded in his objection to the summary judgment motion and during the summary judgment hearing that water periodically flowed to the top of the dam each year since the 1920s. Under *Town of Warren,* these specific acts of trespassory flowage create an inference that the town's predecessors in title flowed Sandford's land beyond 528 feet M.S.L. as of right for a period of twenty years, and thus, established the town's *prima facie* case on the adverse use element. *See id.; see also Ellison v. Fellows,* 121 N.H. 978, 981, 437 A.2d 278, 280 (1981) (adverse use element does not require hostility but "trespassory use"). Accordingly, the burden of production shifted to Sandford to present evidence that the intrusive water flow was, in fact, permissive. *Town of Warren,* 139 N.H. at 243, 652 A.2d at 142.

Sandford argues that the record construed in his favor shows that the intrusive water flow by the town's predecessors in title was

permissive. We disagree. Much of the evidence Sandford relies upon to demonstrate permission cannot be considered for purposes of summary judgment because it is not supported by sworn attestation or it lacks specific factual allegations required under RSA 491:8-a. The remaining evidence is either relevant to only the *post*-1958 flowage or fails to establish permissive use.

Sandford submitted a report entitled "Lake Wentworth Water Level" and a letter dated September 7, 1990, both ostensibly authored by "E.P. Troland" or "E. Parker Troland." The record, however, does not reveal an affidavit from Troland attesting to the truth of the statements contained within the documents. Nor did Sandford file an affidavit articulating "specifically and clearly reasonable grounds for believing that" Troland could present contradictory evidence at trial but could not furnish an affidavit containing such factual allegations to oppose summary judgment. *See* RSA 491:8-a, II (1997). While Sandford identified Troland during the summary judgment hearing as a potential witness for trial, mere witness identification without a supporting affidavit or other documents with appropriate sworn attestation by Troland is not enough to support facts offered for consideration in a summary judgment posture. *See* RSA 491:8-a, III (pleadings, depositions, answers to interrogatories, admissions, and affidavits considered to determine whether genuine issue of material fact exists).

■ Sandford also submitted his own affidavit which encompassed general, conclusory statements that flowage above 528 feet M.S.L. since 1937 was permissive. Specifically, the affidavit stated:

1. As permitted under Superior Court Rule R.S.A. 491:8-a, this affidavit is made to show specifically that contradictory evidence to that asserted by the Town will be presented at trial, and where, as here, the witness's present unava[i]lability and surrounding time constraints, such evidence is not presently available by affidavit.

2. At trial, a credible witness will be presented who, of her own personal knowledge and recollections dating from 1937, will testify that the flowing of Lake Wentworth above 528 feet M.S.L. was with the permission of the relevant title holders.

3. This witness's testimony will support those assertions made in the Plaintiff's Opposition Memorandum of Law on Pages 4 through 10.

At the summary judgment hearing, Sandford identified the "credible witness" as his mother. Sandford's affidavit, however, failed to articulate "specifically and clearly reasonable grounds for believing that contradictory evidence [could] be presented at trial but [could not] be furnished by affidavits," RSA 491:8-a, II. It merely asserted that the evidence to be offered by the witness, his mother, was "not presently available by affidavit" because of "the witness's present unava[i]lability and surrounding time constraints." Therefore, his affidavit is of no value. Furthermore, during the nearly five and one-half month time period between the date of Sandford's affidavit and the trial court's summary judgment order, he filed no affidavit by his mother or anyone else averring to specific facts showing permission. In fact, despite the trial court's specific observation in its order that Sandford failed to set forth specific facts by affidavit after having "had ample time to request the Court to accept an affidavit from his credible witness," Sandford still made no effort to file a sufficient affidavit in support of his motion for reconsideration or reply to the town's objection to his reconsideration motion. Therefore, he did not meet his burden of producing evidence in opposition to the town's motion for summary judgment.

■ Sandford asserts that the town admitted during the summary judgment hearing that the water flowage from 1930 to 1937 was permissive. He argues that because of this admission, the town had the burden of proving that permission was repudiated between 1938 and 1958 or some other action was taken sufficient to demonstrate that its subsequent use was adverse. See Town of Warren, 139 N.H. at 245, 652 A.2d at 143. The particular events at issue involve the allegation that Sandford's grandfather helped incorporate the association which, from 1930 to 1937, made efforts directed at keeping the water level *above* 528 feet M.S.L. During the hearing, the town made several arguments countering Sandford's reliance on these events to show permissive use, including that such events "at best" showed that

> there may have been some kind of permissive use or some kind of permission granted to the dam owner to flow water for the period of 1930 to 1937. That's all that those events can possibly, can possibly prove.

Even assuming these statements could be deemed a concession as to a factual dispute about permission, the town did not concede to the underlying facts necessary to make that dispute material. Specifically, the town premised its argument regarding the association's

conduct between 1930 and 1937 by stating "[the] events that [Sandford] cite[s] . . . involved I believe it was [Sandford's] grandfather *who presumably, we don't know, but presumably* owned the same land [Sandford] owned back in the 1930's." (Emphasis added.) We agree with the trial court that Sandford failed to allege and "to present sufficient evidence to the Court to show that the littoral land his grandfather owned in the 1930's is the same land that [Sandford] owns today." Therefore, any concession concerning permissive use during the 1930s cannot aid Sandford in establishing that use of *his* land was permissive.

Finally, Sandford relies on the town's conduct *since 1958* to demonstrate permissive use, including the language of the 1958 agreement showing the town acquired the dam primarily for the benefit of the littoral property owners, the landowners' contribution of $20,000 to the town's purchase of the dam, and the town's admission that it used input from the association when setting the water level. We conclude that the town's post-1958 conduct, standing alone, is insufficient to establish specific facts demonstrating permissive use *pre*-1958.

■ After reviewing the specific documentation relied on by Sandford in his brief, as well as the remaining documentation in the record, we conclude that Sandford failed to meet his burden of producing evidence that the pre-1958 intrusive water flow beyond 528 feet M.S.L. was, in fact, permitted. *See Town of Warren*, 139 N.H. at 243, 652 A.2d at 142. Further, recognizing that the burden of persuasion never leaves the town as the claimant, we hold that the nature of the trespassory flow established by the undisputed facts shows that the town's predecessors in title were exercising a claim of right to his land above 528 feet M.S.L. "not in reliance upon . . . toleration or permission, but without regard to . . . consent." *Id.* at 243, 652 A.2d at 141 (quotation and emphasis omitted). Accordingly, the undisputed material facts demonstrate that the town satisfied its burden of proving, by a preponderance of the evidence, absence of permission as a necessary component of the adverse use element. *See id.* at 244, 652 A.2d at 142.

## IV

Sandford next argues that the trial court erred in concluding that the town satisfied the continuous use element of a prescriptive easement claim. A careful review of his specific argument, however, reveals that Sandford is actually challenging the scope of the easement found by the trial court rather than the requisite conti-

nuity of use by the town's predecessors in title. Therefore, we address whether the trial court erred in concluding that the scope of the town's easement was the right to flow water to the top of the dam in a reasonable manner.

When one makes a claim for a prescriptive easement, it is not enough to claim a right to cross or invade "the owner's property generally, but rather, it must be for a definite, certain and particular line of use." *Vigeant v. Donel Realty Trust*, 130 N.H. 406, 408, 540 A.2d 1243, 1244 (1988). "The scope of a prescriptive easement is defined by the character and nature of the use that created it." *Cote v. Eldeen*, 119 N.H. 491, 493, 403 A.2d 419, 420 (1979); *see also Ellison*, 121 N.H. at 982, 437 A.2d at 281. While a claimant's use of the easement must be reasonable, the scope of the easement itself is determined by the prior use of the land. *See Ellison*, 121 N.H. at 982, 437 A.2d at 281. The scope of an easement and the reasonableness of its use, however, are distinct requirements. *See id.*

■ The trial court found that the town had acquired a prescriptive easement to flow the water to the top of the dam, and thus flow Sandford's land beyond 528 feet M.S.L. "in a reasonable manner," but the court failed to examine or determine the character and extent of the prior use. The undisputed facts demonstrate that the town's predecessors in title flowed water to the top of the dam during a *portion* of each year. The record does not reflect undisputed, sufficiently supported facts establishing whether such "portion" was a defined and specific time period during each year or rather sporadic throughout. The trial court's ruling, however, ostensibly permits the town to flow water to the top of the dam during any portion of the year, and perhaps on a year-round basis, as long as the use is "reasonable." The court failed to determine, and the undisputed facts fail to illuminate, the character and extent of the pre-1958 use that establish the scope of the easement. We note that the town makes no claim that the nature and duration of its adverse use was any greater post-1958. Accordingly, we reverse and remand to the trial court the issue of the scope of the easement acquired by the town through the pre-1958 use of its predecessors in title. *Cf. Ellison*, 121 N.H. at 982, 437 A.2d at 281 (no need to remand for determination of scope because record clearly indicates boundaries of easement).

V

Finally, Sandford argues that the trial court erroneously presumed that the town's current use of the dam fell within the use

exercised by its predecessors in title, and that the record shows that the use materially changed in 1984, or at least by 1992, exceeding the scope of any pre-existing easement. Because the scope of the easement is not resolved, we cannot address Sandford's claim that the town's subsequent use exceeded the scope of the easement.

In sum, we hold that the undisputed facts demonstrate that the town satisfied its burden of proving that it adversely flowed Sandford's land for a portion of each year for at least twenty years. *Cf. Ellison*, 121 N.H. at 981, 437 A.2d at 280 (intermittent use may be sufficient to establish prescriptive easement). Because Sandford does not challenge the trial court's conclusion on the remaining elements of the town's prescriptive easement claim, we conclude that the town, through the conduct of its predecessors in title, acquired a prescriptive easement to flow water to the top of the dam and thus flow Sandford's land beyond 528 feet M.S.L. to 534.7 feet M.S.L. during a portion of the year. We further hold that the undisputed facts fail to establish the scope of the easement and thus the trial court erred in concluding the town could flow Sandford's land in a reasonable manner, without regard to the scope established by previous use. Accordingly, we reverse and remand to the trial court the issue of the scope of the easement acquired by the town through its predecessors in title.

*Affirmed in part; reversed in part; remanded.*

All concurred.