Carroll
No. 2004-036

JOSEPH W. SANDFORD, JR.

v.

TOWN OF WOLFEBORO

Argued: January 19, 2005
Opinion Issued: March 4, 2005

*Douglas, Leonard & Garvey, P.C.*, of Concord (*C. Kevin Leonard* on the brief and orally), for the plaintiff.

*Barto and Puffer, P.A.*, of Concord (*Mark H. Puffer* on the brief and orally), for the defendant.

*Baldwin, Callen & Hogan, P.L.L.C.*, of Concord (*Carolyn W. Baldwin* on the brief and orally), for the intervenor, Lake Wentworth Association.

DALIANIS, J. The plaintiff, Joseph W. Sandford, Jr., appeals a decision of the Superior Court (*Fauver*, J.) determining the scope of an easement to flow his land; the defendant, the Town of Wolfeboro (town), owns the easement. This case returns to us after remand to the trial court. *See Sandford v. Town of Wolfeboro*, 143 N.H. 481 (1999). We affirm.

The background of this case was initially set forth in *Sandford* and is only briefly restated here. The plaintiff owns property on the shore of Lake Wentworth in Wolfeboro. The water level of the lake is controlled by dam #258.01, which has had a height of approximately 534.7 feet Mean Sea Level (M.S.L.) since the 1920s. It is undisputed that since that time, the water level of the lake was maintained at the top of the dam during some portion of each year. The town acquired the dam by deed from the Smith River Corporation in 1958, subject to an agreement dated April 12, 1958 (the 1958 agreement). The 1958 agreement required the town to maintain certain *minimum* water levels in the lake, which varied according to the time of year. The 1958 agreement did not, however, limit the *maximum* water level of the lake. *Id.* at 483.

In *Sandford*, we found that the town, through the conduct of its predecessors in title, acquired a prescriptive easement to flow water to the top of the dam and, thus, flow the plaintiff's land to 534.7 feet M.S.L. during a "portion" of each year. *See id.* We held that the record did not establish whether that "portion" was a defined and specific time period during each year, or rather sporadic throughout. *Id.* at 490. We held that the trial court erred in concluding that the scope of the town's easement was a right to flow water to the top of the dam, at any time in the year, or perhaps even on a year-round basis, so long as it was done *in a reasonable manner. Id.* Because the trial court failed to determine, and the undisputed facts failed to illuminate, the character and extent of the pre-1958 use that established the scope of the easement, we remanded the issue of the scope of the easement acquired by the town through the pre-1958 use of its predecessors in title. *Id.*

On remand, the trial court concluded that the standards for determining the scope of a right-of-way could not be used to determine prescriptive flow rights, due to the drastic difference between the nature of rights acquired in a right-of-way and those acquired in an easement to flow water onto another's land. The court examined the historical and customary use of the dam to determine the scope of the easement and found:

Therefore, the water level [during the prescriptive period] was governed by the dam owner's needs and desires, as well as the weather . . . .

Accordingly, the scope of the prescriptive easement is as broad as the general use to which the dam owners during the prescriptive period put the dam. The great fluctuation in water heights, along with the fact no maximum height was ever set during the prescriptive period, indicates that the *prescriptive use was determined by the needs and desires of the dam owner and the weather*, and at some point each year, the water flowed to the top of the dam. . . . The scope of the defendant's easement is use that is consistent with the historical and customary use of the dam.

(Quotation and citation omitted; emphasis added.)

In reviewing the findings and rulings of the trial court, we will uphold them unless they are unsupported by the evidence or are erroneous as a matter of law. Our standard is not whether we would rule differently, but rather, whether a reasonable person could have reached the same decision as the trial court based upon the evidence before it. *Hawthorne Trust v. Maine Savings Bank*, 136 N.H. 533, 536 (1992).

The plaintiff argues that the trial court erred by defining the scope of the town's easement based upon intent rather than actual use. The plaintiff relies upon a report by Charles W. Sherman (Sherman Report) dated October 29, 1935, and letters written during the period to establish the pre-1958 use of his land, arguing that those sources determine the scope of the town's easement. He argues that the Sherman Report is the best evidence of the scope of the prescriptive easement.

The Sherman Report is a schedule commissioned by the Carroll County Superior Court to determine appropriate flowage rates through the dam; it was incorporated into a court order in 1936. The report was based upon thirteen years of data of the flow of the lake prior to 1936. The data compiled by Sherman, an engineer, was averaged, and plotted on a graph. The trial court found that the graph was not instructive because "averages are not helpful in determining the 'character and nature' of the use." The trial court found that the correspondence submitted by the plaintiff established only that the water level in the lake was usually high.

The plaintiff asserts that under New Hampshire law,

the party seeking prescription must (in the case of water) prove that he flowed the servient land up to or beyond a minimum point

at the same time of year for 20 years.... The prescriptive easement thus created encompasses *only* the *minimum* area of the servient property that was *continuously utilized at that time of year during the applicable 20 year period.*

(Citations omitted.) This argument mischaracterizes the law of easements to flow land.

█ The scope of a prescriptive easement is defined by the character and nature of the use that created it. *Cote v. Eldeen,* 119 N.H. 491, 493 (1979). "Because no use can ever be exactly duplicated, some variation between the use by which a prescriptive easement was created and the uses made under it after its creation is inevitable. The problem is to ascertain the limits of permissible variation." 4 R. POWELL, POWELL ON REAL PROPERTY § 34.13, at 34-149 (M. Wolf ed., 2004). This determination is easier to make when a right-of-way is at issue. For example, the obvious differences between crossing property on foot or in a vehicle, and between crossing property for personal use or commercial use, have helped define prescriptive easements in past cases. *See, e.g., Cote,* 119 N.H. at 493; *Cataldo v. Grappone,* 117 N.H. 1043, 1049 (1977). In cases where the prescriptive right at issue is the right to flow water onto land, however, the scope of the easement is much more difficult to define.

In *Winnipiseogee Lake Company v. Young,* we faced similar issues. *Winnipiseogee Lake Company v. Young,* 40 N.H. 420 (1860). Having found that the plaintiffs sufficiently alleged a prescriptive easement to flow the defendant's land, we answered the defendant's objection to the uncertain scope of that easement as follows:

The water may be liable to great fluctuations, and if in substance it is alleged that it was kept up as high as their dam would raise it, when there was water, its being drawn by the plaintiffs for their own purposes would not prevent their acquiring a right to the extent of their claim. There is an easement of drawing water from a well. In the nature of things there cannot ordinarily be any continuous use of such an easement; but if it appeared that a party had claimed the right of drawing water at all times, *at his pleasure,* and had exercised the right of drawing, *as he had occasion,* for twenty years, that would establish his right.

Rights of way, and some other easements, are not continuously exercised; but the right is acquired by an uninterrupted use of

the right at all times, *at the pleasure or convenience of the party claiming the right.*

    On the same principle, if the plaintiffs claimed the right to keep the water in their dam at its full height, *whenever they chose, and had water to fill it,* and exercised that right for twenty years, agreeably to their claim, it would be conclusive that they possessed the right.

*Id.* at 436 (emphasis added; citations omitted).

    ■ The right to maintain the level of a body of water as high as the owner of the easement desires, subject to the natural fluctuations of weather and the seasons, was established long ago in New Hampshire. "Here the right established by the use would seem to be, to use all the water that came into this pond, from streams or springs or rains or any other source during the year, *as they please*, with the right to control the same without limit except the height of their dam." *Bucklin v. Truell*, 54 N.H. 122, 124 (1873) (emphasis added).

It has been further established that seasonal or yearly changes in the water level during the prescriptive period do not affect the owner's right to raise the level as high as possible when the weather allows. "That the water might be much lower some years than others would not affect the defendants' right, or prevent their holding all there was in a wet season until their dam was full." *Id.*

    ■ Applying this law to the instant case, we hold that a reasonable person could have found that the town established its easement to flow the plaintiff's land to 534.7 feet M.S.L., the top of the dam, in keeping with the historical and customary use of the dam, within the obvious parameters of weather variations. Therefore we hold that the trial court did not err in determining the scope of the easement.

The plaintiff argues that the trial court's determination was flawed because it is similar to the determination made by the trial court in *Sandford*, *i.e.*, that the scope of the easement was use "in a reasonable manner." *Sandford*, 143 N.H. at 490. The determination made by the trial court in *Sandford* was flawed because the trial court failed to examine or determine the character and extent of the pre-1958 use. *Id.* at 490. On remand, the trial court thoroughly examined the character and nature of the pre-1958 use, and determined that the scope of the town's easement was determined by the needs and desires of the dam owner, subject to fluctuating weather. There is long-standing precedent to support this

finding, and we will not discard it simply because it was not made in *Sandford*.

The plaintiff also argues that the trial court relied upon post-1958 evidence to determine the scope of the town's easement. However, our review of the record indicates that the trial court did not rely upon post-1958 evidence to determine the scope of the town's easement.

The plaintiff lastly argues that the town exceeded the scope of the easement it gained by prescription. Since we held that the trial court was correct in determining that the scope of the easement accords with the dam owner's historical practice of keeping the water level as high as desired, when possible, we reject the plaintiff's argument, as the town could not exceed the scope of this easement as long as dam #258.01 remains at 534.7 feet M.S.L.

*Affirmed.*

BRODERICK, C.J., and NADEAU, DUGGAN and GALWAY, JJ., concurred.