Sullivan
No. 80-468

CHESTER A. ELLISON *& a.*

v.

JOHN R. FELLOWS *& a.*

November 16, 1981

*Lanea A. Witkus*, of Newport, by brief for the plaintiffs.

*Leahy, Denault, Moody & Burling*, of Claremont (*Richard S. Moody* on the brief), by brief for the defendants.

KING, C.J.  The plaintiffs, Chester A. Ellison and Ann A. Ellison, brought a petition to quiet title in the Sullivan County Superior Court challenging the right of the defendants, John R. Fellows and Marion E. Fellows, to an easement across property the plaintiffs own in Newport, New Hampshire. The plaintiffs additionally challenged the location of the easement and argued that if an easement exists, it does not encompass rights in a bridge that the plaintiffs constructed. This is an appeal from a recommendation of the Master (*Walter L. Murphy*, Esq.) and a decree of the Superior Court (*Johnson*, J.) ruling in favor of the defendants. We affirm in part and reverse in part.

Prior to 1951, the property now belonging to the plaintiffs and the property now belonging to the defendants comprised one parcel owned by the heirs of Ira Fellows. Ira Fellows and his wife, who had owned the property for about fifty years, were the parents of John R. Fellows, a defendant herein. In May 1952, the heirs

of Ira Fellows divided the property, deeding part of it to Howard A. Lewis and Ettabelle Lewis, the predecessors in title of the plaintiffs herein, and part of it to the defendants. John Fellows was a half-brother of Ettabelle Lewis.

In 1952, there was a roadway in existence (the "Red Line" Road) which crossed the property conveyed to Howard A. Lewis and Ettabelle Lewis and the property conveyed to the defendants. Neither of these two conveyances, however, mentioned an easement over the existing roadway. From 1952 to 1963, the defendants and their agents used the roadway to transport lumber, wood, gravel and hay across the property of the Lewises.

In 1963, the Lewises conveyed a portion of their property to the plaintiffs by a deed that contained the following language: "Excepting and reserving to John Fellows a right of way for the passage of men, teams and vehicles over the present existing right of way road running from east to west and crossing Coon Brook, so called, to land of Fellows." At the time of this purchase, the defendants were using a ford to cross Coon Brook because the existing bridge had rotted. The plaintiffs were aware of the defendants' use of the ford and the "Red Line" Road when they purchased the property. After the purchase, the defendants continued to use the ford and roadway with the plaintiffs' knowledge.

In 1968, the plaintiffs constructed a bridge across Coon Brook, a short distance below the location of the original bridge. The defendants and their agents used the bridge and the ford until 1979.

In approximately 1972, the plaintiffs improved a section of wood road which also led to the defendants' property, and the defendants used both the expanded wood road (the "Blue Line" Road) and the original path of the roadway until 1979.

In 1980 the plaintiffs brought an action against the defendants to quiet title. Subsequently, Howard Lewis, the surviving joint tenant of the Lewis property, conveyed all of his right, title and interest in the right-of-way to the defendants.

The master found that the defendants had alternative access to their premises by means of a public way and that no right-of-way by necessity across plaintiffs' land was available or asserted by the defendants. *Bradley v. Patterson*, 121 N.H. 802, 805, 435 A.2d 129, 132 (1981).

The master also found, however, that there was such an open, notorious, continuous, and adverse use of the existing roadway (the "Red Line" Road) and ford as to establish a prescriptive right in the defendants. There is sufficient evidence to support the master's finding that the defendants acquired an easement by prescription

by their use of the "Red Line" Road and ford from 1952 through 1979. *See Cataldo v. Grappone*, 117 N.H. 1043, 1046, 381 A.2d 1194, 1195 (1977).

■■ The plaintiffs argue that the statute of limitations for an easement by prescription has not run because the defendants' use from 1952 to 1963 was not adverse, but rather permissive. *See Ucietowski v. Novak*, 102 N.H. 140, 145, 152 A.2d 614, 618 (1959) (permissive use cannot ripen into an easement by prescription). We disagree. Even if the defendants' use was not hostile to the Lewises, who during that time owned the servient estate, an adverse use does not require hostility between the two property owners. Rather, the requirement of adverse use necessitates trespassory use, *United States v. Certain Land*, 247 F. Supp. 932, 934 (D.N.H. 1965), and whether the use is adverse is an issue of fact to be determined by the trial court. *Ucietowski v. Novak*, 102 N.H. at 145, 152 A.2d at 618. There is sufficient evidence to uphold the master's finding that although the exception in the deed from the Lewises to the plaintiffs did not create rights in the defendants as strangers to the instrument, *see Williams v. Babcock*, 116 N.H. 819, 824, 368 A.2d 1166, 1170 (1976), the exception did constitute some "evidence of the existence of the right" and a recognition by the grantors that an adverse claim existed in 1963.

■ The plaintiffs also argue that the defendants' use was not continuous. The master found, however, that their consistent use established an easement by prescription. We agree. Intermittent use is sufficient to establish prescriptive rights if it is " 'characteristic of the kind of road claimed.' " *Cataldo v. Grappone*, 117 N.H. at 1047, 381 A.2d at 1196. In this case, the defendants used the right-of-way to haul hay, and, therefore, utilized the roadway and ford usually during haying season. Additionally, although the defendants did not always use the right-of-way personally, use by their agents is sufficient to establish prescriptive rights in the defendants. *Rosenblatt v. Kizell*, 105 N.H. 59, 60, 192 A.2d 613, 614 (1963).

■ The master also found that the scope of the easement was changed by mutual consent of the parties to encompass both the original roadway (the "Red Line" Road) and ford and the new roadway (the "Blue Line" Road) and bridge built by the plaintiffs. We disagree with this finding. We do not believe there is sufficient evidence to support a finding that the parties agreed to shift the location of the defendants' right-of-way. The plaintiffs built the bridge without the aid of the defendants, and the plaintiffs have

always objected to the defendants' use of the bridge for hauling heavy loads. Although mere protest is not sufficient to toll the statute of limitations for an easement by prescription, *Lang v. Isabelle*, 119 N.H. 780, 782, 407 A.2d 826, 828 (1979), the plaintiffs' protests are an indication that they never consented to a relocation of the defendants' right-of-way.

■■ Furthermore, the defendants continued to use the original roadway (the "Red Line" Road) and ford as well as the new roadway (the "Blue Line" Road) and bridge after 1968. The defendants cannot claim a relocation of their easement when they continued to use their original right-of-way. The defendants' continued use of the original roadway (the "Red Line" Road) and ford, however, indicates that the defendants did not abandon their original easement by prescription. *Cricenti v. Bewley*, 120 N.H. 352, 353, 415 A.2d 675, 676 (1980); *Duchesnaye v. Silva*, 118 N.H. 728, 734, 394 A.2d 59, 62 (1978); *Rosenblatt v. Kizell*, 105 N.H. at 62, 192 A.2d at 615.

■ There is no need to remand to the trial court for a determination of the scope of the easement because the record clearly indicates the boundaries of the defendants' right-of-way. *See Cataldo v. Grappone*, 117 N.H. at 1049, 381 A.2d at 1197. The character and extent of the use that the defendants may make of the easement must be consistent with its previous use, *Cataldo v. Grappone*, 117 N.H. at 1049, 381 A.2d at 1197; *The Leo Foundation v. State*, 117 N.H. 209, 212, 372 A.2d 1311, 1313, *cert. denied*, 434 U.S. 890 (1977), and the use must be reasonable so as not to interfere with the plaintiffs' use of their own property. *Cote v. Eldeen*, 119 N.H. 491, 493, 403 A.2d 419, 420 (1979).

*Affirmed in part; reversed in part.*

BATCHELDER, J., did not participate; the others concurred.