Hillsborough
No. 84-304

SYLVIA TENN, TRUSTEE OF DOXON REALTY TRUST

v.

889 ASSOCIATES, LTD.

October 24, 1985

322

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester, and *Ring & Rudnick*, of Boston, Massachusetts (*Theodore Wadleigh* and *Leslie H. Rudnick* on the brief, and *Mr. Rudnick* orally), for the plaintiff.

*Kfoury & Elliott*, of Manchester (*Charla B. Bizios* and *Paul R. Kfoury* on the brief, and *Mr. Kfoury* orally), for the defendant.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Martha V. Gordon* on the brief, and *Richard C. Nelson* orally), for the intervenor, Harvey Construction Co., Inc.

SOUTER, J. The plaintiff appeals the superior court's dismissal of a bill in equity, by which she sought an injunction against construction of a building and an award of damages. We affirm.

The plaintiff, Sylvia Tenn, owns a six-story office building constructed in 1891 at 907–913 Elm Street in Manchester, known as the Pickering Building. Its south wall is built to the southerly line of its lot. A neighboring building formerly located to the south of the plaintiff's property was built to the same lot line and to a height of nearly four stories, so that up to that height, the south wall of the Pickering Building had no windows. Above the fourth story, a total of twelve windows faced south, as did the glazed south wall of a light shaft, capped with a skylight, which provided light for the offices and halls. Several of the south windows held room air conditioners.

The defendant, 889 Associates, Ltd., now owns the lot south of the Pickering Building. In November, 1983, the defendant's president and treasurer, Michael Ingram, wrote to a representative of the plaintiff, Dr. James Tenn, informing him of the defendant's plans to demolish the existing four-story structure and to replace it with a new one. The letter indicated that the defendant intended to construct the new building, like the old one, to abut the south wall of the Pickering Building, but to a full height of six stories, so that the Pickering Building's room air conditioners would have to be removed. Mr. Ingram offered to meet with Dr. Tenn to describe the plans in more detail.

When they met in December, 1983, Dr. Tenn objected to the plans to block the Pickering Building's south windows and asked Mr. Ingram to redesign the new building with an accommodating setback of several feet. Mr. Ingram declined to do so and proceeded to seek the requisite zoning variances and building permits.

One such requested variance was on the agenda of the Manchester Board of Adjustment for March 19, 1984. Although the written notice of that meeting did not reach the plaintiff, because of an improperly addressed envelope, the plaintiff had actual notice of the meeting, which Dr. Tenn attended with legal counsel. When Mr. Ingram explained to Dr. Tenn that the variance at issue would affect only a back alley, Dr. Tenn and his counsel left the meeting before the board discussed Mr. Ingram's application.

On April 19, 1984, nearly five months after learning of the defendant's plans, and after demolition of the existing building had already begun, the plaintiff filed the present bill in equity. To the extent that the new building would block the windows and the wall of the light shaft, the plaintiff claimed that it would be a private nuisance. She also claimed a prescriptive easement to occupy air space with the air conditioners. She sought an injunction against the construction, plus ancillary damages.

Although the order of notice on the bill in equity is not before us, it appears from the briefs that the defendant's answer was due in June. The defendant filed its answer together with a motion to dismiss the action on May 11, however, and on the same day the Superior Court (*Goode*, J.) took a view in advance of a hearing on plaintiff's request for a preliminary injunction. On May 14, the defendant's contractor was allowed to intervene as a party defendant. Following an evidentiary hearing on May 15, the court denied a preliminary injunction.

When the court then scheduled a final hearing on the merits for June 1, the plaintiff moved for a continuance on the ground that appraisals assessing the project's effect on the value of the Pickering Building could not be completed by that date. The defendant objected on the basis that the plaintiff had been dilatory and construction already had begun. The court denied the continuance and at the June 1 hearing received testimony from the plaintiff that the defendant's construction would reduce the value of the Pickering Building from $700,000 to $300,000. When the court asked whether the plaintiff would accept an offer of $300,000, she stated that she would reject it as too low. The defendant moved for a directed verdict and thereafter, in a chambers conference, rested without offering further evidence.

On the same day, the court made findings that the defendant's building would not be a private nuisance. The court specifically found that the construction would not result in an unreasonable or substantial interference with the plaintiff's use and enjoyment of her property; it specifically found that no easement for the air conditioners had arisen by prescription; and it ruled that there could be no prescriptive right to light, air or view. Accordingly, the court dismissed the petition, and this appeal followed.

■■ The four principal issues before us are whether the court erred in denying the continuance, whether the bill in equity stated a claim sounding in private nuisance, whether the court erred in finding on the evidence submitted that there would be no private nuisance and whether the court erred in finding that the plaintiff had

acquired no prescriptive easement to maintain the air conditioners. The denial of the continuance does not call for extended consideration. Setting a trial date is a matter within the sound discretion of a trial court, as is any ruling on a motion for continuance based on a claim of good cause. *Moore v. Aksten*, 123 N.H. 220, 221, 459 A.2d 266, 267 (1983). A decision on a motion to continue will therefore not be held erroneous "unless it is clear that the [trial] court either did not consider the Motion or Objection on its merits or that injustice will definitely result from the court's decision." R. WIEBUSCH, 5 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 1012 (1984).

 In the case before us there was no injustice. While it was certainly unusual to call for trial before the date originally set by the court for filing an answer, the issues had been joined by the defendant's answer on May 11, four days before the hearing on the injunction. And while it was likewise unusual to deny a continuance for completion of expert witness preparation, in this case it was warranted. There was no record to demonstrate that the plaintiff's appraisers could not be prepared by June 1, and there was every reason to conclude that the plaintiff should have been prepared to try her case by that date. She had had five months' notice of the defendant's plans for construction before she brought her bill in equity, and another six weeks between filing the bill and the June 1 hearing. She had deferred action until the contractor had begun work on the site and it was apparent that further delay would be far more harmful to the defendant than timely litigation would have been. Indeed, the only injustice would have been to delay the trial.

We thus reach the substantial issues in this appeal, whether the law of private nuisance is broad enough to comprehend a claim of interference with light and air, whether the court correctly applied that law in this case and whether there was a prescriptive right to maintain the air conditioners. In considering the applicability of nuisance law to the interests at stake, it will be helpful to start by canvassing the alternative possibilities that the parties have discussed.

At one extreme there is the English common law doctrine of ancient lights, under which the owner of a window that has enjoyed unobstructed access to sunlight for a sufficient period of time can acquire a prescriptive easement entitling him to prevent an adjoining landowner from obstructing the accustomed light. Comment, *Solar Rights: Guaranteeing a Place in the Sun*, 57 OR. L. REV. 94, 108–09 (1977); *see also* R. MEGARRY & H. WADE, THE LAW OF REAL PROPERTY 831 (2d ed. 1959). While in the early days some American

courts adopted a similar rule, it fell into disfavor during the nineteenth century. By 1977 "no American common-law jurisdiction affirmatively recognize[d] an ability to acquire an easement of light by prescription," Comment, *supra* at 112 (footnotes omitted), and "very few, if any, American courts today would uphold a prescriptive right to light," Pfeiffer, *Ancient Lights: Legal Protection of Access to Solar Energy*, 68 A.B.A. J. 288, 289 (1982).

Historically, there have been three principal reasons for the unpopularity of the doctrine of ancient lights: a desire to foster unimpeded development of real estate, a belief that in an age of artificial illumination light should be classed as an aesthetic rather than a property interest, and a suspicion that the enjoyment of light was so far from a characteristically adverse use that it could not fall within the basic concept of prescriptive use. *See* Comment, *supra* at 110–11; *Prah v. Maretti*, 108 Wis. 2d 223, 235, 321 N.W.2d 182, 189 (1982).

■ While time has not weakened the third of these historical reasons, the first and second have definitely begun to wane. The desire to encourage unrestricted development has receded as zoning and planning regulations have become more comprehensive, and access to natural light can be expected to justify an increasing degree of protection as the technology of solar energy develops. It does not follow, however, that we should turn to the doctrine of ancient lights to accomplish this purpose. Because the law of zoning is itself one means to recognize an interest in access to light and air, and because, as we will discuss below, the law of nuisance is another, we reject the argument that a prescriptive right to light or air should be recognized at this time. *Cf. Morton v. State*, 104 N.H. 134, 140–41, 181 A.2d 831, 835 (1962) (assuming possibility of conveyance of rights to light, air, etc.).

At the other extreme among the positions taken in this litigation is the rule customarily identified with *Fontainebleau H. Corp. v. Forty-Five Twenty-Five, Inc.*, 114 So. 2d 357 (Fla. App. 1959), *cert. denied*, 117 So. 2d 842 (Fla. 1960). In that case the court dissolved a trial court's preliminary injunction against construction of a building that would have cast a shadow over the cabana, pool and sunbathing areas of a neighboring hotel. The court ruled out the possibility of proving a nuisance on the facts before it by affirming Florida's traditional rule, that in the absence of a zoning restriction, a property owner could build up to his property line and as high as he chose. The rule in *Fontainebleau* thus stands at the furthest remove from the doctrine of ancient lights. Where the latter would limit the neighbor's right to build, the former never would.

■ The present defendant urges us to adopt the *Fontainebleau* rule and thereby to refuse any common law recognition to interests in light and air, but we decline to do so. If we were so to limit the ability of the common law to grow, we would in effect be rejecting one of the wise assumptions underlying the traditional law of nuisance: that we cannot anticipate at any one time the variety of predicaments in which protection of property interests or redress for their violation will be justifiable. For it is just this recognition that has led the courts to avoid rigid formulations for determining when an interference with the use of property will be actionable, and to rest instead on the flexible rule that actionable, private nuisance consists of an unreasonable as well as a substantial interference with another person's use and enjoyment of his property. *See Robie v. Lillis*, 112 N.H. 492, 495, 299 A.2d 155, 158 (1972). That is, because we have to anticipate that the uses of property will change over time, we have developed a law of nuisance that protects the use and enjoyment of property when a threatened harm to the plaintiff owner can be said to outweigh the utility of the defendant owner's conduct to himself and to the community. *Id.* at 496, 299 A.2d at 159.

■ Viewing the elements and concept of private nuisance as thus formulated in *Robie*, there is no reason in principle why the law of nuisance should not be applied to claims for the protection of a property owner's interests in light and air, and for reasons already given we believe that considerations of policy support just such an application of nuisance concepts. We therefore hold that the law of private nuisance as expressed in *Robie* provides the appropriate standard for passing on a property owner's claims of interference with interests in light and air. *See Prah v. Maretti*, 108 Wis. 2d 223, 240, 321 N.W.2d 182, 191 (1982).

Since this is the course that the trial court followed, the third of the substantial issues before us is whether the evidence supported the court's finding that the defendant's building would not be a private nuisance. As a preliminary matter there is some controversy about the procedural character of the conclusion that the court reached. The plaintiff points to the fact that the defendant and the intervenor had moved for directed verdict, and she assumes that the court's ruling of June 1, 1984, was a response to that motion. The plaintiff has not, however, pointed to any order expressly granting the motion for directed verdict, and the June 1st order does not appear to be such. Rather it addresses the merits of a private nuisance action, in terms of the plaintiff's burden to prove the elements of nuisance by a preponderance of the evidence. We review it

accordingly, by inquiring whether the court's findings were reasonably supported by the evidence. We hold that they were.

The court found, first, that the threatened interference would not be unreasonable. It based this conclusion on findings that nearly all the affected office windows had previously been covered with translucent but not transparent plastic sheets or were blocked by heavy drapes. The southerly openings to the light shaft were covered by translucent but not transparent glass, which admitted substantially less light than the clear skylight above it. It was uncontested that virtually every affected office would continue to receive light from the shaft or from the east or west windows of the building.

The court addressed the issues both of reasonableness and of substantiality when it further found that such interference as there would be would not exceed what was normal under the circumstances. The sites were in the downtown commercial area of Manchester, where buildings commonly buttress and block the sides of adjacent structures. Moreover, the defendant proposed to do no more than the plaintiff's own predecessor had done, by building right to the lot line and to a height of six stories. If, as the plaintiff claimed, this would require expenditures for additional artificial lighting and ventilation systems, she failed to present any evidence that the costs would exceed what was customarily necessary for such buildings.

The court again alluded to the element of substantiality of the threatened interference when it expressly found that little weight should be accorded to the evidence that the Pickering Building would drop in value. This finding was warranted both by the plaintiff's unconvincing evidence on the point, and by this court's holding in *Robie* that evidence of depreciation in value is to be given little weight in the law of nuisance, since "the law cannot generally protect landowners from fluctuating land values which is a risk necessarily inherent in all land ownership." *Robie v. Lillis*, 112 N.H. at 497, 299 A.2d at 160.

Thus on the issues of unreasonableness and substantiality the evidence supported the findings. The evidence also supported the court in its more general conclusion under *Robie*, that the utility to the defendant and to the public of a new office building would outweigh the burden to the plaintiff of installing additional lighting and ventilating equipment. The court therefore was warranted in finding that the building as planned would not be a private nuisance.

We turn now to the final issue of substance. Quite apart from her claims to have protectable interests in light and air, the plaintiff

claimed to have an easement to use the defendant's air space for the air conditioners that protruded from the windows. There was no evidence of any express or implied grant of such an easement. Assuming, then, that such an easement could arise by prescription, it was necessary for the plaintiff to

> "prove by a balance of probabilities twenty years' adverse, continuous, uninterrupted use of [defendant's property] in such a manner as to give notice to the record owner that an adverse claim was being made to it. *The nature of the use must [have been] such as to show that the owner knew or ought to have known that the right was being exercised,* not in reliance upon his toleration or permission, but *without regard to his consent.*"

*Ucietowski v. Novak,* 102 N.H. 140, 144–45, 152 A.2d 614, 618 (1959) (emphasis added) (citations omitted). *See* RESTATEMENT OF PROPERTY §§ 457 and 458 (1944); *Ellison v. Fellows,* 121 N.H. 978, 981, 437 A.2d 278, 280 (1981).

Whether the plaintiff satisfied this standard was an issue of fact to be determined by giving consideration to the peculiar circumstances of an alleged use of small amounts of air space several stories above the ground. *See Ucietowski v. Novak, supra* at 145, 152 A.2d at 618. Thus, acts that might be obtrusive and ostensibly adverse at ground level would not necessarily have the same character high above the street.

■ Considering these circumstances, the record supports the trial court's finding that the plaintiff did not carry her burden. The evidence indicated that for the required twenty-year period only two or three portable air conditioners had been so placed as to extend several inches into the air space, and that each of these was twelve feet or more above the roof of the building formerly on the defendant's lot. There was no evidence that these air conditioners were or appeared to be permanently installed, that they interfered in any way with the then-current use and enjoyment of the defendant's property or that they physically intruded onto an appreciable portion of defendant's space. In the absence of any such evidence, the trial court was not compelled to conclude that the defendant or his predecessors knew or should have known that the plaintiff was claiming a right to use the defendant's air space for the placement of the air conditioners. Thus, under *Ucietowski* the trial court reasonably found that no easement had arisen by prescription. *Ellison v. Fellows supra. Cf. Matthys v. Swedish Baptist Church of Boston,* 223 Mass. 544, 112 N.E. 228 (1916) (roof of church which extended four feet over property line, from which snow and ice regularly fell

onto adjoining land, held sufficiently adverse to create prescriptive easement).

There is one final issue for us to note, which arises on the plaintiff's argument that the zoning variance granted by the board of adjustment on March 19, 1984, was void because the board had failed to notify the plaintiff, as an abutting owner, that it would consider the defendant's request for a variance at the March 19 meeting. *See* RSA 31:71. The plaintiff claims that the trial judge should therefore have regarded the defendant's construction as a violation of the zoning ordinance when considering whether the building would be a reasonable or unreasonable interference with the plaintiff's interests. *See Treisman v. Kamen*, 126 N.H. 372, 493 A.2d 466 (1985) (in passing on nuisance claims, zoning ordinances are highly persuasive indications of what society considers reasonable in the use of property).

 The facts do not support this argument. Although the board unquestionably failed to give the plaintiff written notice of the meeting, the plaintiff just as unquestionably had reasonable actual notice of it. Dr. Tenn and his legal counsel attended the hearing, and no prejudice resulted from the failure to provide the plaintiff with written notice. The trial court was therefore entitled, when passing on the nuisance claim, to assume that the defendant had complied with zoning regulations.

The trial court did not err in dismissing the bill in equity.

*Affirmed.*

JOHNSON, J., did not sit; the others concurred.