Hillsborough-northern judicial district
No. 2000-337

MARILYN BILLINGS MCNAMARA & a.

v.

ROBERT J. MOSES & a.

August 31, 2001

*Upton, Sanders & Smith*, of Concord (*Russell F. Hilliard* on the brief), for the plaintiffs.

*Law Offices of Robert J. Moses*, of Amherst (*Robert J. Moses* on the brief), for the defendants.

DUGGAN, J. The defendants, Robert J. and Sandra A. Moses, appeal the Superior Court's (*Lynn*, J.) award of damages and penalties for the unlawful cutting of trees on a lot owned by the plaintiffs, Marilyn Billings McNamara and William Vargas. We affirm.

The trial court found the following facts. The plaintiffs and the defendants own property and reside in Eagle Rock Estates, a residential subdivision in Amherst. The plot plans for the subdivision depict the access to the defendants' lot to be a shared driveway connecting the lot with Colonel Wilkins Drive. The driveway is steep and winding and very difficult to use during the winter; consequently, since 1977, the defendants have used an unpaved roadway, Eagle Rock Drive, which provides a much easier means of access to their lot. Until approximately 1998, the defendants and other residents of the subdivision believed Eagle Rock Drive was located within the subdivision's common land, which is owned by the Eagle Rock Estates Association (association).

The plaintiffs bought their lot in August 1997. At that time, they were informed, and therefore believed, that Eagle Rock Drive was located on the common land that abutted the rear of their property. As a result of a proposal to pave Eagle Rock Drive made at an association meeting in December 1997, the plaintiffs researched the location of Eagle Rock Drive and discovered that it traversed their lot. At another association meeting in May 1998, the plaintiffs shared their discovery with the other association members. In response to a query from another landowner at the meeting, Mr. Moses indicated that the association members had adverse posses-

sion of the roadway. The plaintiffs subsequently wrote a letter to the defendants granting permission to use Eagle Rock Drive for the time being, but urging them to upgrade their deeded driveway and to begin using it instead. The letter also stated that the plaintiffs would not agree "to pave the roadway under any conditions."

On December 3, 1998, the plaintiffs discovered a workman employed by the defendants cutting trees along the roadway on their property. The workman indicated that he was preparing the road for further work at the request of the owner. McNamara told the workman that the property was hers and that she had not given permission to cut the trees. She then told him to stop cutting and to leave after he had cleared any trees or brush interfering with passage along the roadway. Vargas met with the defendants later that day and told them that they had no right to do any work on the road. Mr. Moses replied that "he owned the road," and asked, "what are you going to do about it?" In a letter to the defendants written that day, the plaintiffs expressed their dismay that their trees had been cut without their permission and informed the defendants that they had retained counsel to represent them as to the status of the road. The following Sunday, December 6, 1998, the plaintiffs returned from a weekend away to discover that the defendants had hired a contractor who had regraded the roadway and widened it by approximately five feet. The defendants' widening effort included the felling of at least twelve of the plaintiffs' birch and pine trees that did not interfere with passage over the roadway.

The plaintiffs brought an action in superior court to enjoin the defendants from accessing their lot by way of Eagle Rock Drive and to obtain damages and penalties for unlawfully cutting trees on the plaintiffs' lot along the roadway. After a two-day trial and a view of the property, the court, sitting without a jury, concluded that the defendants had a prescriptive easement to use the roadway to access their lot, see *Town of Warren v. Shortt*, 139 N.H. 240, 242-43 (1994), but that cutting trees on the plaintiffs' property in an effort to widen the roadway had been an unreasonable use of the easement, see *Ellison v. Fellows*, 121 N.H. 978, 982 (1981). The court awarded the plaintiffs compensatory damages of $1,200, the market value of the trees cut in the widening, and penalties of five times that amount, $6,000, see RSA 227-J:8 (Supp. 1998), for a total of $7,200. The defendants appeal the award of damages and penalties, arguing that: 1) McNamara's testimony as to the value of the trees was inadmissible; 2) the court erred in awarding damages based on speculation and approximation; 3) the court erred in awarding penalties pursuant to a statute the plaintiffs did not invoke in their

pleadings; and 4) the court abused its discretion in quintupling the damages.

The defendants first argue that the court erroneously admitted McNamara's testimony as to the value of the felled trees. The defendants' argument is twofold. First, they contend that McNamara's testimony was inadmissible under New Hampshire Rules of Evidence 701 and 602, in that her lay testimony was based, not on her own knowledge, but exclusively on "an unidentified nursery employee of some unclassified sort and internet 'surfing.'" The defendants fail to recognize that, although McNamara testified that she had acquired knowledge of current comparable values of trees through Internet research and visits to a number of nurseries, she also testified that she relied on her "knowledge from long ago about the value of birch and other trees from having logged land with my first husband." Moreover, McNamara testified that she was familiar with the trees, had seen them standing and growing, and had identified each tree by size and species, documenting each one by number with photographs and rubbings of the stump. That her personal knowledge of the trees growing on her land was supplemented by research relating to current market values does not render her testimony inadmissible under the terms of Rule 701.

The defendants' second argument that McNamara's testimony was inadmissible is that it was "incomplete on all of the issues necessary for a calculation of the proper measure of damages" and therefore did not satisfy Rule 701 because it was not helpful to the trier of fact. The defendants did not raise this issue at trial; thus, the issue is not preserved for our review. *See State v. McAdams*, 134 N.H. 445, 446 (1991).

The defendants next argue that the court erred in awarding damages based on speculation or approximation of the value of the trees. Relying upon *Hydraform Products Corp. v. American Steel & Aluminum Corp.*, 127 N.H. 187, 197 (1985), and *Fitz v. Coutinho*, 136 N.H. 721, 725 (1993), the defendants argue that speculative losses are not recoverable. The defendants' reliance is misplaced, however, in that the term "speculative" in these cases refers to whether a particular loss has been or will be incurred rather than to the valuation of an actual loss. Thus, the cases are inapposite to our consideration of the quantification of a loss that has in fact occurred.

The trial court awarded compensatory damages of $1,200 for the twelve trees for which the plaintiffs claimed damages, specifically finding that McNamara's estimated value of $100 per tree was "reasonable and, if anything, conservative." McNamara provided

the only testimony as to the trees' value, relying on her research at various nurseries and on the Internet and on her own knowledge. She identified the species of the trees in question and submitted rubbings and photographs of the tree stumps demonstrating the size of each tree in support of her testimony. Contrary to the defendants' contention, McNamara's testimony did not link her per-tree valuation estimate solely to a white birch, but rather "to the lot." The fact that McNamara did not identify each tree by species when testifying as to the average value of the felled trees does not render the court's finding erroneous, particularly in light of the defendants' decision neither to cross-examine her nor to offer contrary testimony. Finally, the mere fact that the plaintiffs' estimate of the value of the trees was an approximation is not fatal. *See Phillips v. Verax Corp.*, 138 N.H. 240, 247 (1994). The court did not err in adopting McNamara's uncontroverted testimony. *See Int'l Surplus Lines Ins. Co. v. Mfgs. & Merchants Mut. Ins. Co.*, 140 N.H. 15, 21 (1995) (court will not disturb findings of fact by the trial court unless they are lacking in evidential support or tainted by error of law).

The defendants next argue that the trial court erroneously awarded damages pursuant to RSA 227-J:8 when the plaintiffs' petition expressly invoked only RSA chapter 539, the applicable section of which had been repealed prior to the events in question. We note that, contrary to the defendants' assertion, the court did not apply the statute *sua sponte*. Rather, at the end of their case, the plaintiffs brought to the court's attention that former RSA 539:1 had been replaced by RSA 227-J:8.

Although it is clearly desirable to state both the statutory basis for a claim and the facts supporting the right to proceed under the statute in the petition, *see* 4 R. WIEBUSCH, NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 7.18, at 177 (2d ed. 1997), the statute under which a plaintiff proceeds need not be explicitly set forth. *See Gilman v. County of Cheshire*, 126 N.H. 445, 450-51 (1985). A statutory claim is sufficiently stated if the facts are "so alleged that the court, on the face of the declaration, can see that the action is founded on the statute." *Id.* at 450. The plaintiffs alleged, among other things, that a certified arborist, acting under the authority of the defendants, cut approximately twenty trees on the plaintiffs' property without the plaintiffs' permission. The plaintiffs' prayer for relief included a request that the court "[a]ward damages to the plaintiffs against the defendants for the loss of the trees (including the penalty pursuant to RSA Chapter

539)." These allegations were sufficient to put the defendants on notice that the plaintiffs were basing their claim for damages, in part, on a statute providing a penalty for cutting trees without the owners' permission. Thus, RSA 227-J:8, which provides just such a penalty and which was in force at the time of the events alleged by the plaintiffs, was properly invoked. That a statute which had previously provided similar remedies was explicitly relied on is immaterial.

The defendants' contention that the plaintiffs' failure to expressly invoke RSA 227-J:8 left them without notice as to the claim the plaintiffs were asserting is particularly unpersuasive given that RSA chapter 227-J (Supp. 1998) replaced, among other statutes, those sections of RSA chapter 539 relating to forestry, pursuant to a comprehensive "recodifi[cation of] all existing forestry laws into one chapter." N.H.H.R. JOUR. 477 (1995). The defendants were sufficiently apprised of the claims against them.

■ The defendants finally argue that the trial court abused its discretion by awarding quintuple the value of the felled trees as the penalty for violating RSA 227-J:8. RSA 227-J:8 provides:

> I. No person shall negligently cut, fell, destroy, injure, or carry away any tree, timber, log, wood, pole, underwood, or bark which is on the land of another person, or aid in such actions without the permission of that person or the person's agent.

> II. In addition to any other civil or criminal penalty allowed by law, any person who violates the provisions in paragraph I shall forfeit to the person injured no less than 3 and not more than 10 times the market value of every such tree, timber, log, lumber, wood, pole, underwood, or bark cut, felled, destroyed, injured, or carried away.

The record supports the court's finding that the defendants willfully caused the cutting of trees on the plaintiffs' property, thereby amply justifying a multiplier at the low end of the range specified in the statute. In particular, in addition to being informed at the May 1998 association meeting that the land in question was owned by the plaintiffs, when questioned as to whose land he thought he had been driving across prior to the meeting, Mr. Moses responded, "I didn't know, other than I knew it wasn't mine." The court's assessment that the cutting on the plaintiffs' land was

intentional was also supported by testimony that, when Vargas confronted the defendants on the afternoon of the cutting, their responses were, respectively: "what are you going to do about it?" and a statement that Mrs. Moses would "continue the rest of the clearing herself with her own chainsaw." Moreover, after having been informed that they did not have permission to clear the land further, the defendants continued the clearing three days later when the plaintiffs were out of town.

There is also ample evidence in the record that the cutting of the trees on the plaintiffs' property exceeded the reasonable use allowed in maintaining their prescriptive easement, in that the clearing was inconsistent with the easement's previous use. *See Ellison*, 121 N.H. at 982. While maintaining the easement by keeping the road free of brush and overhanging limbs that interfered with passage over the road was within the defendants' rights, an expansion of the roadway beyond its previous width was not. McNamara's testimony, photographs introduced into evidence, and the trial court's observations of the property supported the court's conclusion that the easement had been cleared approximately five feet beyond the traveled portion of the roadway and that the cleared trees had not interfered with passage over the road. Moreover, the fact that the trees felled by the defendants ranged up to a diameter of eight inches indicates that they had been growing much longer than the three-to-four years since Mr. Moses claimed to have last maintained the road, further supporting the conclusion that the easement was expanded beyond its previous use.

Finally, to the extent that the defendants argue that RSA 227-J:8 is inapplicable to the controversy at hand, the argument is not preserved as it was not raised in the notice of appeal. *See State v. Blair*, 143 N.H. 669, 672 (1999).

The defendants' remaining arguments lack merit and warrant no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

The plaintiffs' request for fees and expenses is denied without prejudice to their right to request costs pursuant to Supreme Court Rule 23.

*Affirmed.*

BROCK, C.J., and BRODERICK, NADEAU and DALIANIS, JJ., concurred.