6th Circuit Court — Concord District Division
No. 2014-158

NEW HAMPSHIRE FISH AND GAME DEPARTMENT

v.

EDWARD BACON

Argued: January 15, 2015
Opinion Issued: April 30, 2015

*Joseph A. Foster*, attorney general (*Philip B. Bradley*, assistant attorney general, on the brief and orally), for the State.

*Seufert, Davis & Hunt, PLLC*, of Franklin (*Brad C. Davis* on the brief and orally), for the defendant.

LYNN, J. The defendant, Edward Bacon, appeals an order of the Circuit Court (*Boyle*, J.), following a bench trial, finding that he violated RSA 206:26-bb (2011) (amended 2014) by acting negligently while hiking, so as to require a search and rescue effort by the plaintiff, the New Hampshire Fish and Game Department (Department), and that he, thus, was responsible to the Department for the reasonable costs associated with the search and rescue. We affirm.

I

The following facts are established by the record. On September 16, 2012, the defendant began a five-day solo hiking trip in the White

Mountains, during which he planned to hike several mountains with summits over 5,000 feet. At the time of the hike, the defendant was fifty-nine years old, had undergone four hip surgeries since 2005, and had an artificial hip that had dislocated on five occasions, twice during the prior year. The defendant also had a "bad back" and was taking a variety of medications for multiple ailments. In preparation for his hike, the defendant trained in a city park in Michigan, which had 250-foot hills and some "gravelly" spots. The conditions on the Franconia Ridge Trail between Liberty and Little Haystack Mountains, on which the rescuers eventually located the defendant, are rocky and steep in various locations.

On September 18, the defendant left the Liberty Springs campsite to begin a planned hike to the summits of Liberty, Little Haystack, Lincoln, and Lafayette Mountains; he planned to end at the Greenleaf Hut, which provides overnight accommodations to hikers. Days in advance, stormy weather had been forecast for the morning the defendant began the hike, and rain began a few hours after he departed the campsite. A bit later, the defendant's pack cover "on its own accord came off and flew away in the wind." Sergeant Brad Morse, a Conservation Officer with the Department who helped rescue the defendant, testified that the winds were among the worst he had ever experienced in that part of the Franconia Ridge Trail and had repeatedly blown him to the ground. Sometime that morning, the defendant slipped on loose gravel, slid down the trail, hit his pack on a rock, and lost his tent which fell down a ravine. At noon time, the defendant took a photograph of two other hikers he encountered on the trail, both of whom were wearing full rain gear with their hoods over their heads.

At around 1:00 p.m., the defendant encountered a waist-high rock ledge that he needed to traverse in order to continue on the trail. He attempted to jump backward up onto the ledge and, in the process, fell and dislocated his hip. Approximately one hour later, Morse received an alert that a hiker had dislocated his hip and needed assistance. He responded immediately and eventually located the defendant on the trail between Little Haystack and Lincoln Mountains. Morse testified that when he found the defendant his left leg was flexed and internally rotated, the very position that the defendant's orthopedic surgeon had warned him to avoid due to his hip replacement.

Approximately fifteen Department personnel and thirty-five volunteers participated in the defendant's rescue during the afternoon and evening of September 18 and into the early morning hours of September 19. When Lieutenant James Kneeland visited the defendant in the hospital after his rescue, the defendant explained that he had misread the weather report: he thought the forecast called for 30-40 mph winds with gusts up to 70 mph and heavy rain, instead of the actual forecast of 30-40 mph winds increasing

to 70 mph and heavy rain. The defendant also told Kneeland that he had caught his left leg while attempting to jump backward up onto a rock ledge and dislocated his artificial hip when he fell.

The defendant testified to a different version of events at trial. For instance, he testified that he was unaware of the weather conditions on the day of the hike because he did not have his reading glasses with him, and that he did not encounter any significant rain or wind. Additionally, he testified that when he dislocated his hip he had not fallen, as he told Kneeland, but instead had jumped backward over a rock ledge and swung his legs up while perfectly maintaining his left leg to avoid flexion and internal rotation.

At the close of the trial, the court accepted closing memoranda from both parties. Thereafter, the court found for the Department "for all of the reasons cited in the plaintiff's closing memorandum," and awarded the Department $9,334.86 in damages. The defendant filed a motion to reconsider, to which the Department objected. The court denied the defendant's motion, stating that "[t]he actions of the defendant were a gross deviation from those of a reasonable person that surpasses the [negligence] standard required." This appeal followed.

## II

The defendant raises three arguments on appeal. First, he argues that the trial court erred by judging his conduct under an ordinary negligence standard which, he asserts, is not the standard mandated by RSA 206:26-bb. Second, he argues that there was insufficient evidence to support the court's finding that his actions while hiking were negligent, thus necessitating his rescue by the Department. Third, he argues that the court's damages award was improper under RSA 206:26-bb because the award included recovery for expenses that the Department would have incurred regardless of its effort to rescue him. We address each argument in turn.

## A

The defendant first argues that the court erred by applying the ordinary negligence standard to determine his liability under RSA 206:26-bb. He characterizes this standard as "incorrect," and asserts that the court should instead have applied "the full and complete" civil standard of negligence, although he fails to articulate how this standard differs from the standard of "ordinary negligence."

To resolve this issue we must engage in statutory interpretation. "Statutory interpretation is a question of law, which we review *de novo*."

*Appeal of Local Gov't Ctr.*, 165 N.H. 790, 804 (2014). "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole." *Id.* "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." *Id.* "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." *Id.* "We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." *Id.*

We have not previously had occasion to construe the search and rescue response statute. It provides, in pertinent part:

> I. [A]ny person determined by the department to have acted negligently in requiring a search and rescue response by the department shall be liable to the department for the reasonable cost of the department's expenses for such search and rescue response. The executive director shall bill the responsible person for such costs. Payment shall be made to the department within 30 days after the receipt of the bill, or by some other date determined by the executive director. If any person shall fail or refuse to pay the costs . . . the department may pursue payment by legal action . . . .

RSA 206:26-bb. This statute plainly is intended to create a statutory cause of action in favor of the Department to recover the costs it incurs in conducting a search and rescue operation for a person whose negligent conduct required such an operation. *See Marquay v. Eno*, 139 N.H. 708, 714 (1995) ("Whether or not a common law duty exists, . . . a plaintiff may maintain an action directly under [a] statute if a statutory cause of action is either expressed or implied by the legislature."). Also plain is that the statute imposes as the duty of care the common law standard of negligence, which we have defined as how a reasonable person would be expected to act under the same circumstances. *See Gelinas v. Metropolitan Prop. & Liability Ins. Co.*, 131 N.H. 154, 161 (1988). Thus, in order to avoid liability for search and rescue costs, the defendant must have hiked in a manner that was reasonable under all of the circumstances. Accordingly, we hold that the trial court did not err in using the common law standard of negligence to evaluate the defendant's conduct under RSA 206:26-bb.

## B

The defendant next argues that there was insufficient evidence upon which to find that he acted negligently, resulting in his need for rescue by

the Department. In particular, the defendant takes issue with the fact that the trial court's order stated that it found for the Department "for all of the reasons cited in the plaintiff's closing memorandum." He asserts that, in so doing, the court improperly adopted as its findings the facts recited in the Department's memorandum — which facts, he claims, are not supported by the evidence. We disagree.

We will uphold the trial court's findings and rulings unless they lack evidentiary support or are legally erroneous. *Cook v. Sullivan*, 149 N.H. 774, 780 (2003). "It is within the province of the trial court to accept or reject, in whole or in part, whatever evidence was presented, including that of the expert witnesses." *Id.* "Our standard of review is not whether we would rule differently than the trial court, but whether a reasonable person could have reached the same decision as the trial court based upon the same evidence." *Id.* "Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence." *Id.*

We first consider the defendant's argument that the trial court's findings are not supported by the evidence because the court adopted the Department's closing memorandum, which he claims relied upon findings that were also not supported by the evidence. Having reviewed both the evidence presented at trial and the Department's closing memorandum, we reject the defendant's argument that the Department's closing memorandum was not supported by the evidence.

We next consider whether there was sufficient evidence to support the trial court's determination that the defendant acted negligently. As previously stated, a person violates RSA 206:26-bb by not acting as a reasonable person would have acted under the same circumstances. The defendant argues that he did not act negligently because he was prepared for the conditions, physically capable, had proper equipment, and had adequately planned his hike. The trial court concluded to the contrary when it found that the defendant did not act as a reasonably prudent hiker would have acted under the same circumstances. The following facts, recited by the Department in its memorandum and based upon the evidence, support the trial court's conclusion: the defendant had undergone multiple hip surgeries; he had an artificial hip that had dislocated five times, twice within the year prior to his hike; he had trained in a city park that did not remotely resemble the challenging terrain he would experience in the White Mountains; he had continued his hike despite the fact that bad weather had been forecast days in advance and that he encountered high winds and rain early into his hike; and he chose to jump backward over a rock ledge he was unable to pass, despite his artificial hip and experience with hip dislocation.

■ To the extent that the defendant argues that his injury was not foreseeable, we agree with the trial court's conclusions that the defendant's injury was foreseeable and directly caused his need to be rescued by the Department. *See Estate of Joshua T. v. State*, 150 N.H. 405, 408 (2003) (stating that to establish proximate cause a plaintiff must show "that the defendant's conduct caused or contributed to cause the harm"). For the foregoing reasons we conclude that the trial court's determination that the defendant acted negligently does not lack evidentiary support and is not legally erroneous. *See Cook*, 149 N.H. at 780. Accordingly, we uphold the trial court's ruling.

## C

Finally, the defendant argues that the court's damages award was improper because it included wages and mileage for on-duty Department officers who would have been paid regardless of their participation in the rescue operation. In essence, he claims that the damages provide a windfall to the Department. We disagree.

■ "In reviewing damage awards, we will consider the evidence in the light most favorable to the prevailing party." *Gallentine v. Geis*, 145 N.H. 701, 703 (2001) (quotation and brackets omitted). "Furthermore, we will not disturb the decision of the fact-finder unless it is clearly erroneous." *Id.* (quotation omitted). "The law does not require 'absolute certainty' for recovery of damages." *Id.* (quotation omitted). "We do, however, require an indication that the award of damages was reasonable." *Id.* RSA 206:26-bb states that "any person determined by the department to have acted negligently in requiring a search and rescue response by the department shall be liable to the department for the *reasonable cost* of the department's expenses for such search and rescue response." (Emphasis added.)

■ The trial court awarded $9,186.38 in damages to the Department, plus costs and interest. At trial, Kneeland testified that this amount represented the Department's costs for the fifteen personnel who participated in the rescue, and included overtime, mileage, and benefits. These figures were contained in a document entitled "Search and Rescue Mission Report," which was admitted by stipulation as a full exhibit. This detailed, itemized report, when viewed in the light most favorable to the Department, indicates that the trial court's damages award represented the "reasonable costs" associated with the rescue, as required by RSA 206:26-bb.

■ ■ We reject the defendant's argument that this sum provides a windfall to the Department because certain officers were on duty and thus would have been paid regardless of their participation in his rescue. Not only does this argument fail to take into account the overtime paid to

Department employees who would not have worked in the absence of the rescue, but it also ignores the fact that, by being diverted to the rescue operation, Department employees were unable to perform their other assigned duties. The statute specifically states that the Department is to receive the "reasonable costs" associated with the rescue. RSA 206:26-bb. Nothing in the statute otherwise limits the Department's recovery, and we will not add limiting language to the statute that the legislature did not include. *See Appeal of Local Gov't Ctr.*, 165 N.H. at 804 ("We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include."). Because the trial court's damages award of $9,186.38, plus costs and interest, is reasonable, and thus is not clearly erroneous, we uphold it.

*Affirmed.*

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.