**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2015-0337, <u>Paul A. DeHetre & a. v. Linda Barron</u>, the court on February 18, 2016, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The plaintiffs, Paul A. DeHetre (Paul A.), Paul F. DeHetre, and Broadway Auto Sales (Broadway), appeal an order of the Superior Court (<u>Delker</u>, J.) in favor of the defendant, Linda Barron, in their equity action to determine the ownership of two motorcycles. They contend that the trial court erred by finding that the defendant owned the motorcycles. We review questions of law <u>de</u> <u>novo</u>, and we will uphold the trial court's findings of fact unless they are lacking in evidentiary support or erroneous as a matter of law. <u>Gen. Linen Servs. v. Smirnioudis</u>, 153 N.H. 441, 443 (2006).

At the outset, we waive Supreme Court Rule 13(3) to the extent that it requires the record to be provided in an appendix. <u>See</u> <u>Sup. Ct. R.</u> 1. Although the plaintiffs attached their motion to reconsider the trial court's order to their notice of appeal, and not to their brief or appendix, they have provided it to us.

The plaintiffs argue that the parties entered into an enforceable contract, sometime between October 2009 and September 2010, to transfer the motorcycles to Paul A. The existence of a contract is a factual question to be determined by the trier of fact. <u>Durgin v. Pillsbury Lake Water Dist.</u>, 153 N.H. 818, 821 (2006). The plaintiffs rely upon three letters from the defendant's attorneys to Paul A. to establish the contract.

The trial court implicitly found that the letters did not establish the existence of a contract. Although its order did not directly address whether a contract existed, at the hearing, the trial court observed that the first letter "pretty obviously" was not "a final agreement" between the parties. It admitted all three of the letters into evidence because "how that discussion progressed is relevant to whether it culminated in a formal agreement." Ultimately, however, the trial court determined that the defendant owned the motorcycles. Accordingly, we assume that it found that the parties did not enter into a contract to transfer the motorcycles to Paul A. <u>See</u> <u>Nordic Inn Condo. Owners' Assoc. v. Ventullo</u>, 151 N.H. 571, 586 (2004) (stating we assume trial court made all findings necessary to support its decision).

We conclude that the evidence at trial supports the trial court's implicit finding. Nothing in the record establishes that Paul A. assented to or performed the actions proposed in the three letters. On the contrary, he admits that he refused to execute the purchase and sale agreements, which waived any warranties, that the defendant requested in return for transferring the motorcycles to him. In response to the attorneys' letters, he claimed that the defendant had already transferred the motorcycles to him in 2008, which contradicts his claim that he entered into a contract with the defendant in 2009 or 2010 to transfer the motorcycles to him.

The plaintiffs next argue that they acquired title to the motorcycles as a matter of law when the defendant executed the original titles in 2008 and allegedly delivered them to Paul A. Transfer of title to a motor vehicle requires that the owner: (1) "execute an assignment and warranty of title to the transferee in the space provided therefor" on the title, RSA 261:14, I (2014); and (2) deliver the title to the transferee. Id. Although Paul A. testified that the defendant signed the titles to the motorcycles in blank and delivered them to him, the defendant testified that she signed the titles, but never gave them to anyone, instead keeping them in her possession. The plaintiffs argue that it "defies logic" that the defendant executed the titles in blank without "anticipat[ing] a transfer of the titles," but this does not conclusively demonstrate that she intended to transfer them to Paul A. or Broadway.

The trial court concluded that "[t]his case essentially comes down to a credibility contest between Paul A." and the defendant. It found that the defendant "was more credible than Paul A." because "[h]er explanation of the events surrounding the purchase of the two motorcycles was more logical and more consistent with the documentary evidence than Paul A.'s story" and "her demeanor . . . and the consistency of her version supported her credibility." It also found that "Paul A.'s affect did not appear genuine, he was combative when confronted with conflicting or inconsistent evidence, and his explanation for his conduct simply did not ring true." We defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence. N.H. Fish & Game Dep't v. Bacon, 167 N.H. 591, 596 (2015).

The plaintiffs argue that the defendant knew that Paul A. and Broadway "had custody and control of the original certificates of title" and that she obtained duplicate New Hampshire titles to the motorcycles "in an effort to cut off the chain of title to Broadway." However, the defendant testified that she believed that she had lost the titles and that she obtained duplicate titles in February 2009, prior to learning, in 2010, that Paul A. had taken the originals. We defer to the trial court's credibility determination as to this factual dispute. See id.

2

The plaintiffs argue that the trial court should have looked beyond the legal title to the motorcycles and awarded them the motorcycles because Paul A. demonstrated more "incidents of ownership" than the defendant. However, the record amply supports the trial court's finding that the defendant owns the motorcycles. <u>See</u> <u>Gen. Linen</u>, 153 N.H. at 443.

<u>Affirmed</u>.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,<br>Clerk**
