NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2015-0583


ROBERT JESURUM

v.

WBTSCC LIMITED PARTNERSHIP & a.

Argued: September 21, 2016
Opinion Issued: December 9, 2016


Shaines & McEachern, PA, of Portsmouth (Paul McEachern and Jacob Marvelley on the brief, and Mr. Marvelley orally), for Robert Jesurum.


Douglas, Leonard & Garvey, P.C., of Concord (Benjamin T. King on the brief and orally), for WBTSCC Limited Partnership and William H. Binnie, trustee of the Harrison Irrevocable Trust.


Joseph A. Foster, attorney general (Rebecca L. Woodard, senior assistant attorney general), for the State, filed no brief.


Donovan Law Office, of Concord (Michael L. Donovan), for the Town of Rye, filed no brief.

LYNN, J.  WBTSCC Limited Partnership and William H. Binnie, trustee of the Harrison Irrevocable Trust (hereinafter "the defendants")[1], appeal orders of the Superior Court (Wageling, J.): (1) concluding that members of the public, including the plaintiff, Robert Jesurum, had acquired a prescriptive easement over a portion of property owned or controlled by the defendants in the Town of Rye; (2) determining the scope of the easement; and (3) awarding attorney's fees to the plaintiff.  We affirm in part and reverse in part.

I

The pertinent facts are as follows.  The plaintiff has been a resident of Rye since 1990.  The defendants own property located on Wentworth Road in Rye, the majority of which is used as a golf course.  At issue in this case is a small, parabolic-shaped area on the northeastern corner of the defendants' property, referred to by the trial court as "Sanders Point."  Wentworth Road abuts the property's northern border.  To the southeast, Sanders Point connects to Little Harbor Beach via a five-foot wide sandy walking path.  Little Harbor Beach is on an inlet to the Atlantic Ocean and forms the southeastern border of the golf course.

Prior to 2012, Sanders Point was a flat, gravel area with two connections to Wentworth Road.  On the edges of the area were several signs that had been installed by the Town of Rye.  One read "Beach Access," another forbade parking from 11 p.m. to 6 a.m., and a third prohibited recreational vehicles and campers.  Near Wentworth Road, there was a grass square containing a fire hydrant and two metal poles.  The southwestern border of Sanders Point was separated from the rest of the golf course by a split rail wooden fence, which the plaintiff testified that he believes has existed since the early 1990s.

At least since the 1950s, members of the public parked at Sanders Point to access the adjacent Little Harbor Beach using the sandy path, usually to dig for worms.  During the 1970s and 1980s, members of the public regularly parked their vehicles at Sanders Point throughout the year to access the beach to walk their dogs, dig for worms, observe birds or inclement weather, and windsurf.

In the 1990s, usage of Sanders Point increased.  The plaintiff stated that he "very rare[ly]" saw Sanders Point devoid of people.  On several occasions during the 1990s and 2000s, golf course personnel used a portion of Sanders Point as a staging area.  In 1996 or 1997, golf course personnel stored materials on the gravel area for an irrigation project.  In 2004, golf course personnel used Sanders Point when they rebuilt a golf course pump house.  Finally, in 2007, golf course personnel used Sanders Point when they cleaned

[1] Although named as defendants in the superior court action, neither the Town of Rye nor the State filed a brief in this appeal.

up debris caused by a storm. There was no evidence that the public's use was interrupted by these projects. At no point did members of the public seek or receive express permission to use the gravel area or to access the beach.[2]

Tensions between the public and the defendants rose concomitantly with the increase in the public's use of Sanders Point. Trash and dog feces were left on the golf course, and individuals traversed onto the golf course. In addition, Binnie testified that there were confrontations between golf course employees and members of the public. In response to these incidents, the defendants blocked off Sanders Point from public access in October 2012 by installing boulders, bushes, and a fence between Sanders Point and Wentworth Road.

In January 2013, the plaintiff brought this action seeking, among other things, a declaratory judgment that both the plaintiff and the public have the right to a prescriptive easement over Sanders Point for parking and to access Little Harbor Beach. Both sides moved for summary judgment. The trial court granted the plaintiff's motion for summary judgment and denied the defendants' motion, ruling that the public possessed a prescriptive easement over Sanders Point. The trial court did not, however, determine the scope of the public's easement rights because the parties had not briefed that issue. Instead, the court scheduled a hearing on the "scope" issue, which was held in June 2015. Following the hearing, the court ruled that the public was entitled to use Sanders Point to park and to access Little Harbor Beach, subject to certain restrictions.[3]

The plaintiff also sought attorney's fees, which the trial court initially declined to award. The plaintiff moved for reconsideration, and, while that motion was pending, the defendants appealed to this court. When the trial court thereafter granted the motion for reconsideration and approved an award of attorney's fees, the defendants moved to strike the award. The trial court denied the motion, and we thereafter permitted the defendants to add the attorney's fees issue to their appeal.

---

[2] The defendants presented two witnesses to rebut the plaintiff's evidence regarding long term public use of Sanders Point, but the trial court found their testimony unpersuasive. The court discounted the testimony of one witness because the witness was employed in one of Binnie's business ventures and because his testimony was against the weight of the evidence. The court found that the other witness did not "have the same kind of contact" with Sanders Point as the other witnesses. The only other evidence presented by the defendants was a letter sent from Binnie to the plaintiff, granting the latter permission to walk his dogs over the golf course.

[3] The court ruled that the public easement was limited to "four short-term, regular-sized public parking spaces" that could be utilized "from dawn to dusk." The court also ruled that the easement permitted beach access for persons walking from the parking area to the beach, including persons carrying canoes, kayaks and other vessels, but that the easement did not extend to the carting or towing of vessels down to the water on the path.

## II

Before considering the merits of the issues raised on appeal, we first determine the applicable standard of review. The defendants contend that, because the trial court granted summary judgment in favor of the plaintiff on the issue of the existence of a prescriptive easement, we must review <u>de novo</u> the trial court's application of law to the facts and "look at the affidavits and other evidence, and all inferences properly drawn therefrom, in the light most favorable to the non-moving party." <u>Del Norte, Inc. v. Provencher</u>, 142 N.H. 535, 537 (1997). Although the defendants properly articulate the standard applicable to review of a trial court's grant of summary judgment, <u>see, e.g.</u>, <u>Prolerized New England Co. v. City of Manchester</u>, 166 N.H. 617, 622 (2014), this case presents an unusual situation in which the standard does not apply.

It is true that the trial court granted summary judgment in the plaintiff's favor on the issue of the existence of a public easement over Sanders Point, and postponed ruling on the issue of the scope of the easement until it could hold an evidentiary hearing on the merits. Yet our review of the record demonstrates that, at that hearing, the distinction between the issues of the existence of the easement and the scope of the easement was blurred to the point that the court effectively allowed the defendants to re-litigate the issue of whether an easement existed at all. For example, the defendants' counsel asked several witnesses whether they were ever told by golf course employees that they could not use Sanders Point—a line of inquiry that relates to whether the public's use of Sanders Point was adverse, not the scope of the public's use. Similarly, the defendants elicited testimony that golf course personnel had used Sanders Point to the exclusion of the public. Again, this testimony did not relate to the scope of the public's easement, but to whether the public's use of Sanders Point was continuous. Based on this testimony, the defendants submitted proposed findings of fact and rulings of law that are emblematic of the conflation of the issues of "existence" and "scope" of the easement. Among other things, the defendants requested that the court find that the plaintiff "failed to satisfy his burden of persuasion that he or the public acquired <u>any</u> prescriptive rights over the subject land." (Emphasis added.) The trial court, in turn, ruled on the defendants' arguments that no public easement existed.[4]

Given that the defendants re-litigated the existence of the easement at what amounted to a full bench trial on the merits, we disagree with the defendants that we are constrained by the standard of review applicable to appeals from orders granting summary judgment.[5] Rather than reviewing the

---

[4] These arguments included: (1) that the public's use of Sanders Point was not continuous and uninterrupted; (2) that the public's use was not adverse because the use was over undeveloped and unenclosed land; and (3) that the public's easement terminated due to excessive use.

[5] We note that the defendants make no claim that, as a result of the trial court's grant of summary judgment, they were precluded from presenting, or led to believe they would be precluded from presenting, at the hearing any particular evidence bearing on the existence or

record in the light most favorable to the defendants, we employ the more deferential standard that applies to the review of a trial court's decision rendered after a trial on the merits. Under this standard, we uphold the trial court's factual findings and rulings unless they lack evidentiary support or are legally erroneous. N.H. Fish & Game Dep't v. Bacon, 167 N.H. 591, 596 (2015). We do not decide whether we would have ruled differently than the trial court, but rather, whether a reasonable person could have reached the same decision as the trial court based upon the same evidence. Id. "Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence." Id. (quotation omitted). Nevertheless, we review the trial court's application of the law to the facts de novo. Sirrell v. State, 146 N.H. 364, 370 (2001).

III

Having established the pertinent standard of review, we turn to the defendants' arguments on appeal. The defendants first argue that the trial court erred in finding that the plaintiff and the public hold a prescriptive easement at Sanders Point because the plaintiff failed to prove that their use of Sanders Point was adverse. There are two prongs to their argument on adverse use. First, they claim that the plaintiff failed to meet his initial burden to prove that the use of Sanders Point was of such a character as to put the defendants on notice that an adverse claim was being made. The defendants assert that the plaintiff's and the public's use of the land in question was so minor and "incidental" that the defendants would "not have supposed that . . . the public was making an adverse claim of right." The defendants alternatively contend that, even if the plaintiff met his initial burden, they produced evidence showing that the plaintiff's and the public's use of Sanders Point was permissive.

"To establish a prescriptive easement, the plaintiff must prove by a balance of probabilities twenty years' adverse, continuous, uninterrupted use of the land claimed in such a manner as to give notice to the record owner that an adverse claim was being made to it." Greenan v. Lobban, 143 N.H. 18, 22 (1998) (quotation omitted). "The nature of the use must have been such as to show that the owner knew or ought to have known that the right was being exercised, not in reliance upon the owner's toleration or permission, but without regard to the owner's consent." Sandford v. Town of Wolfeboro, 143 N.H. 481, 484 (1999) (brackets and quotation omitted). Yet "adverse use does not require hostility between the two [parties]," so long as the use is "trespassory." Ellison v. Fellows, 121 N.H. 978, 981 (1981). "Use is trespassory if it consists of a wrong which the fee holder can prevent or for

_____

non-existence of the prescriptive easement. In short, from all that appears, the defendants had a full and fair opportunity to litigate the existence of the easement at the hearing.

which he can obtain damages by means of legal action." Bonardi v. Kazmirchuk, 146 N.H. 640, 642 (2001) (quotations omitted). This principle applies to public as well as private prescriptive easements. See Opinion of the Justices (Public Use of Coastal Beaches), 139 N.H. 82, 92 (1994).

In assessing the matter of adverse use, we employ a burden-shifting framework. See Bonardi, 146 N.H. at 643. "To establish a prima facie case of adverse use, [a claimant] must first produce evidence of acts of such a character that they create an inference of non-permissive use." Id. Once the claimant satisfies this initial burden, "the burden of production shifts to the landowner to produce evidence to the contrary on the issue of permission or run the risk of the fact finder finding in the claimant's favor." Sandford, 143 N.H. at 486. "The burden of persuasion remains at all times on the [claimant]." Bonardi, 146 N.H. at 643. Whether a use of property is adverse is an issue of fact. See Town of Warren v. Shortt, 139 N.H. 240, 242 (1994). Thus, "[w]e will reverse the trial court's findings and rulings on the issue of adversity only if they are unsupported by the evidence or erroneous as a matter of law." Id. (quotation omitted).

Here, the evidence supports the trial court's conclusion that the plaintiff met his prima facie burden of demonstrating that the public's use of Sanders Point was adverse. There was evidence that the public's use of Sanders Point was not "incidental," as the defendants claim, but rather was extensive and long-standing. Similarly, the record contains evidence that individuals parked at Sanders Point and traveled to Little Harbor Beach to dig for worms as early as the 1950s; that throughout the 1970s and 1980s, both locals and tourists parked at Sanders Point during all seasons of the year, taking the path to the beach to engage in a range of activities including boating and dog walking; and that, by the 1990s, kayakers began parking at Sanders Point and the public's use became significant enough to warrant the town installing several regulatory signs prohibiting overnight parking and certain vehicle types.

These facts stand in sharp contrast to those of Town of Warren, upon which the defendants rely to argue that an incidental use cannot ripen into a prescriptive easement. In that case, the defendant's property contained a private road that businesses on an adjacent estate had a deeded, express easement to use. Id. at 241-42. The town claimed that the public's simultaneous use of the road had created a prescriptive easement. Id. at 242. We noted, however, that the public's use was not sufficient to put the defendant on notice of its adverse nature because "a use that is incidental to a use that is in fact permitted by the owner of the servient tenement will not develop into a prescriptive easement, unless the user has done more in order to put that owner on notice of any claim of right." Id. at 245 (quotation omitted; emphasis added). Our discussion demonstrates that what we meant by an "incidental use," as described in that case, was a use that is of a similar character to a use that is expressly permitted over the servient estate, thus

6

making it difficult for the owner of that estate to distinguish between authorized and unauthorized use. It was in that limited circumstance that we spoke of the adverse users' need "to do more" to put the owner on notice that a claim of right is being asserted.

By contrast, the trial court found that Sanders Point has been used almost exclusively by the public. Because neither the defendants nor their predecessors ever granted an easement to anyone to use the disputed area, there is no other use to which the public's use of the area can be considered "incidental," and thus no need for the plaintiff to produce the more compelling proof contemplated by Town of Warren to establish that the public's use of Sanders Point was adverse to the defendants. See id.

Next, the defendants argue that no easement existed because they had granted the public permission to use Sanders Point. The defendants cite, as evidence supporting their assertion, the "neighborly" interactions between members of the public and golf course personnel at times when the former used Sanders Point, as well as Binnie's letter to the plaintiff. The defendants' argument conflates friendly or "neighborly" relations with permissiveness. The neighborly interactions between golf course employees and the public do not negate the fact that the public used Sanders Point without regard for the property rights of the defendants or their predecessors. There was evidence that, from the 1950s until 2012, the public accessed Sanders Point openly and without any regard to the permission of the owners of the property. None of the witnesses who testified at trial ever sought permission to use Sanders Point, nor did the defendants broadcast in any way their "permission" to the public. Multiple witnesses testified that they believed the area to be a public parking lot. Moreover, Binnie's letter has little probative force because it was addressed only to the plaintiff and concerned the walking of dogs on the cart paths of the golf course, not the public's use of Sanders Point. Consequently, we hold that the trial court did not err in ruling that the public's use of Sanders Point was adverse.

IV

We next address several additional contentions advanced by the defendants concerning alleged errors in the trial court's rulings, specifically: (1) that the scope of the easement should be limited to digging for worms and searching for shellfish; (2) that the trial court improperly disregarded local land use ordinances and regulations; (3) that the court did not make several essential findings regarding the scope of the easement; and (4) that the evidence did not show continuous and uninterrupted use of Sanders Point for parking by the public. We address these arguments in turn.

7

A

"The scope of a prescriptive easement is defined by the character and nature of the use that created it." Cote v. Eldeen, 119 N.H. 491, 493 (1979). A prescriptive easement "must be for a definite, certain and particular line of use." Sandford, 143 N.H. at 490 (quotation omitted).

The defendants argue that the easement at Sanders Point should be limited in scope to digging for worms and searching for shellfish because the first recorded use of Sanders Point was limited to those purposes. This argument confuses the public use made of Sanders Point with the public use made of Little Harbor Beach. The public's activities at Little Harbor Beach are not germane to the determination of the scope of the easement at Sanders Point. New Hampshire law guarantees the public's right to use any beach below the level of mean high tide for any lawful purpose. See RSA 483-C:1 (2013); Purdie v. Attorney General, 143 N.H. 661, 665-66 (1999). The relevant inquiry is whether the character and nature of the public's use of Sanders Point was definite and certain over the prescriptive period. See Sandford, 143 N.H. at 490. The record establishes that the public parked at Sanders Point and used the trodden path to access Little Harbor Beach starting in the 1950s. Thus, the use that the public made of Little Harbor Beach is irrelevant. Similarly irrelevant, as the trial court noted, is the subjective intent of members of the public in using Sanders Point. What is relevant is that the public's "line of use" of Sanders Point—parking in the gravel area and using the sandy footpath for beach access—was a definite, certain, and particularized use that continued for at least twenty years. Accordingly, we conclude that the trial court did not err in determining the scope of the easement.

B

The defendants next contend that the trial court did not properly consider local land use ordinances and environmental regulations in determining the scope of the public's use of Sanders Point. Moreover, they argue that such ordinances or regulations would have limited the public's ability to park at Sanders Point. However, the record below does not support the defendants' contentions. Rather, the record shows that the trial court sustained an objection to proposed testimony by Binnie to the effect that the Sanders Point parking area lies within a wetlands buffer zone where parking would be prohibited. The trial court based its ruling upon its conclusion that Binnie was unqualified to offer an opinion as to whether parking vehicles at Sanders Point would be allowable under the pertinent environmental laws. The court made clear that it would consider evidence addressing this issue if presented through a properly qualified witness. Inasmuch as the defendants offered no such evidence, and do not claim on appeal that the trial court erred by finding that Binnie was unqualified to offer an opinion on whether the parking of vehicles at Sanders Point was consistent with applicable

8

environmental regulations, this argument affords no basis for us to overrule the trial court's decision.

C

The defendants also assert that the trial court erred by failing to make several findings necessary to support its decision regarding the scope of the easement. Specifically, the defendants contend that the court erred by not finding: (1) when an adverse use first occurred and when prescriptive rights ripened; (2) the precise use that gave rise to the easement; and (3) whether any changes in the use of the easement were reasonable. We disagree. We do not require the claimant of a prescriptive easement to identify the precise date upon which prescriptive rights ripened or when adverse use first began. See Vigeant v. Donel Realty Trust, 130 N.H. 406, 409 (1988) ("Since the plaintiffs have shown that the use extended at least as far back as 1948, or a twenty-year span at a point prior to the installation of the gates, the master could have found the required twenty years of continuous use."). Provided that a claimant establishes a continuous use of 20 years, which the trial court found the plaintiff did, the precise dates need not be conclusively determined.

Moreover, the trial court definitively described the public's specific use of the area which gave rise to the easement: parking vehicles at Sanders Point and using the walking path to access Little Harbor Beach. In addition, the trial court did assess whether the changes in the public's use of the easement were reasonable, finding that any "allegedly unreasonable burden" on the defendants did not "warrant action at this juncture." Consequently, we conclude that the trial court did not err in its conclusions.

D

Finally, the defendants contend that they interrupted the public's ability to park at Sanders Point by conducting three construction projects in the area over the course of nearly a decade. Thus, they argue that the public's use of Sanders Point was not continuous.

Termination of an adverse use can result from the assertion of the landowner's paramount right over the property. See Salminen v. Jacobson, 83 N.H. 219, 220 (1928). In order for interruption of adverse use to occur, there must ordinarily be a "physical interruption of the use or some unequivocal act of ownership on the part of the owner." 28A C.J.S. Easements § 38 (2008). "Mere intermission is not interruption," however. Hoban v. Bucklin, 88 N.H. 73, 82 (1936) (quotation omitted).

Here, the evidence supports the trial court's finding that there was no interruption of the plaintiff's or the public's use of the parking area by the defendants. Although the defendants occasionally used Sanders Point as a

9

staging area for construction projects in the late 1990s and early 2000s, we agree with the trial court that none of the uses were unambiguous acts calculated to oust the public from Sanders Point.  On the contrary, at least one witness stated that the storage of materials at Sanders Point merely suggested that there was "joint access" with the defendants.  Consequently, we conclude that the trial court did not err in finding that the plaintiff demonstrated continuity of public use for the period necessary to attain prescriptive rights.

V

We turn now to the award of attorney's fees.  The defendants argue that the trial court erred by awarding the plaintiff attorney's fees pursuant to the substantial benefit theory.  Specifically, the defendants claim that: (1) the trial court lacked jurisdiction to award attorney's fees because its order doing so was issued after the defendants appealed the trial court's order on the merits to this court; and (2) the substantial public benefit exception is inapplicable because the defendants are private entities and the plaintiff is not a public trustee.

"We will not overturn a trial court's award of attorney's fees unless it is an unsustainable exercise of discretion."  Bennett v. Town of Hampstead, 157 N.H. 477, 483 (2008).  "In applying this standard, we keep in mind the substantial deference given to the trial court's decision on attorney's fees, and uphold the decision if the record provides some support for it."  Id.

Initially, we consider whether the trial court had jurisdiction to award attorney's fees.  Because the defendants filed their appeal before the trial court could rule upon the plaintiff's outstanding motion for reconsideration of the denial of attorney's fees, we conclude that the defendants' appeal, at the time initially filed, was effectively interlocutory (or premature) and did not deprive the trial court of jurisdiction to act on the fee request.  See Yager v. Clauson, 169 N.H. 1, 9 (2016); see also Sup. Ct. R. 8 (pertaining to an interlocutory appeal from ruling); cf. Van Der Stok v. Van Voorhees, 151 N.H. 679, 681 (2005) (holding that the plaintiff properly waited for all issues in the case, including a request for attorney's fees, to be finally decided before taking an appeal).  The defendants should not have appealed until all outstanding motions to reconsider had been resolved.[6]

Turning to the merits, we observe that "New Hampshire generally follows the American Rule; that is, absent statutorily or judicially created exceptions, parties pay their own attorney's fees."  Shelton v. Tamposi, 164 N.H. 490, 501

---

[6] Although, at the time it was first filed, the appeal was premature, in light of the facts that (1) we later accepted the defendants' request to add the attorney's fees issue, (2) the case has been fully briefed and argued, and (3) the plaintiff has shown no prejudice, we conclude that the initial prematurity does not prevent us from hearing the case.

10

(2013). That rule notwithstanding, "[a] prevailing party may be awarded attorney's fees when that recovery is authorized by statute, an agreement between the parties, or an established judicial exception to the general rule that precludes recovery of such fees." Frost v. Comm'r, N.H. Banking Dep't, 163 N.H. 365, 377 (2012) (quotation omitted). One judicially-created exception is the substantial benefit theory, which allows an "award of attorney's fees to the prevailing party where the action conferred a substantial benefit on not only the plaintiffs who initiated the action, but on the public as well." Claremont School Dist. v. Governor (Costs and Attorney's Fees), 144 N.H. 590, 595 (1999). In Bedard v. Town of Alexandria, 159 N.H. 740, 746 (2010), however, where the party claiming attorney's fees was a governmental entity, we ruled that awarding attorney's fees against a private litigant was unnecessary and unwarranted because a government entity's responsibilities included the "protection of the public interest."

We recognize that the instant case is distinguishable from Bedard in that it involves only private litigants. See Bedard, 159 N.H. at 741, 746. Although in one sense the circumstances here can be viewed as more worthy of an award of fees in that, unlike a public entity, a private plaintiff's responsibilities do not normally include protection of the public interest, we nonetheless conclude that an award of fees against a private litigant under the public benefit theory is unwarranted. To countenance such an award would be a substantial departure from our case law, as we generally do not grant fees against a private litigant absent a showing of bad faith.[7] See id.; Claremont School Dist., 144 N.H. at 594-95. When attorney's fees are awarded under the substantial benefit theory against a public litigant acting in good faith, the purpose is "not to penalize the State, but rather to compensate the plaintiff . . . for [his or her] efforts on behalf of the public." Claremont School Dist., 144 N.H. at 595. More importantly, the cases in which attorney's fees have been imposed against a losing party under a public benefit theory generally involve situations in which the party bearing the fees is able to spread such costs amongst the persons who receive the benefit of the litigation, for example through taxation (in the case of a governmental body) or through the effect of the expenses on share value (in the case of shareholder derivative litigation). See Mills v. Electric Auto-Lite, 396 U.S. 375, 396-97 (1970) ("To award attorneys' fees [to a

---

[7] The trial court in part relied upon our decision in Silva v. Botsch, 121 N.H. 1041 (1981), in which we held that a selectman was entitled to attorney's fees after he had successfully sued his fellow selectmen, as authority for awarding fees against a private party. Although it is true that the defendants in Silva were the other selectmen rather than the town itself, we analogized the situation in that case to one in which a trustee brings a suit "for the primary benefit of the trust as a whole," Silva, 121 N.H. at 1043, and emphasized that "the plaintiff's action conferred a substantial benefit on the Town of Merrimack and the State of New Hampshire," id. (quotation omitted). Although we did not specifically state as much, this reasoning, combined with the stipulated fact in that case that neither party acted in bad faith, see id. at 1042, clearly reflects that we contemplated the fees we awarded would be paid by the town and not personally by the defendant selectmen. Thus Silva provides no support for the trial court's fee award in this case.

successful plaintiff in a shareholder derivative action] is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefitted from them and that would have had to pay them had it brought the suit.").

This rationale does not hold when the substantial benefit theory is applied to this case. Here, although the public benefitted from the litigation, the defendants are not representatives of the public, and they have no ability to pass on attorney's fees assessed against them to those who benefitted from the litigation. See id.; see also Claremont School Dist., 144 N.H. at 595. When attorney's fees are awarded against a private party who has acted in bad faith, the purpose is to "do justice and vindicate rights," as well as to discourage frivolous lawsuits. Harkeem v. Adams, 117 N.H. 687, 690, 690-91 (1977). Where, as here, a private party acts in good faith to defend what it believes are its property rights, and that party's opponents are found to advance the public interest, a zero-sum scenario is created wherein one party may be benefitted by an award of attorney's fees only by imposing unwarranted hardship upon the other. We recognize that some courts have approved the award of attorney's fees against private litigants under the so-called "private attorney general doctrine." See Sierra Club v. Dep't of Transp. of State, 202 P.3d 1226, 1263, 1263-76 (Haw. 2009). Nonetheless, we are not persuaded that rewarding one party's advancement of the public interest by shifting fees to opposing parties who have acted in good faith to defend their property rights so clearly represents sound public policy that it is proper for us to adopt such a rule by judicial decision. Indeed, given that there can undoubtedly be widely disparate views as to what actions do or do not further the public interest, to adopt such a rule could result in an exception that would swallow the American Rule regarding attorney's fees. In sum, we conclude that the conflicting policy considerations inherent in creating such a change to existing law dictate that, if this change is to be made, it should be done by the legislature. See Petition of Kilton, 156 N.H. 632, 645 (2007). Consequently, we conclude that the trial court erred in awarding attorney's fees to the plaintiff.

VI

In conclusion, we affirm the trial court's ruling that the public has a prescriptive easement over Sanders Point and its determination of the scope of the easement. We reverse its award of attorney's fees to the plaintiff.

Affirmed in part; and
reversed in part.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.

12